McKinney, J.,
delivered the opinion of the court.
On the 28th of January, 1850, by an act of the general assembly, a turnpike road company was incorporated, known by the name of the “Brick Church Turnpike Company; ” the members of this company being the plaintiff in error, and seven others named in the act of incorporation. The charter confers on any five of the corporators power to locate the road, and to open books for subscription of stock. The company did not organize until the 9th of June, 1851. But before the acceptance of the charter and organization of the company, by the procurement of some of the corporators, a book was prepared for the subscription of stock, and the following agreement written therein: “We, the. undersigned, do hereby subscribe for the number of shares attached to each of our names, in the Brick Church turnpike company, and bind ourselves to pay over to said company the amount of our respective subscriptions, in compliance with the act incorporating said company, passed by the general assembly of Tennessee, January 28th, 1850. 'Witness our hands, this 12th April, 1851.” Underneath this agreement in the book, the plaintiff in error signed his name as a subscriber for forty shares of stock, amounting to one thousand dollars. Other persons in like manner subscribed for stock in said road. On the 5th of June, 1851, the plaintiff in error, and six others named in the charter, caused a notice to be *494 written and made public, (which notice was signed by them respectively,) to the effect that a meeting of the company would be held at the court house in Nashville, on the 7th of Hay, 1851, “to take measures to organize the company, and for other purposes.” About the time of the publication of this notice, the plaintiff in error made sale of a valuable tract of land, through which, by the route designated in the charter, the turnpike road was to be laid out. On the appointed day of the meeting of the corporators, the plaintiff in error, after being sent for several times, appeared and declared that he intended to have nothing more to do with the road, and requested that his name be erased from the subscription book.
After this, a call was made for five per cent, on the stock subscribed, and the plaintiff in error refusing to pay said call, this suit was brought to recover the same, and a recovery w¡is had in the circuit court. His honor, the circuit juc^^. instructed the jury in substance that a,, subscriptiop?dff'‘stobk, made before the charter was accepted by the company, would not be binding on the subscribers, and might be withdrawn at any time before such acceptance. But that if Grleaves subscribed for stock in contemplation of the charter being accepted, and — without rescinding or withdrawing his subscription — the charter was afterwards accepted, and he concurred in the acceptance, such concurrence was an act from which the jury might infer a ratification of the previous subscription, in the absence of any thing to rebut such inference. That if Grleaves and the other commissioners who signed the notice referred to in the proof, issued such notice with the intention thereby of *495 accepting tbe charter, that such act would amount to an acceptance, and that after the charter was accepted, Gleaves could not withdraw his subscription without the consent of the company.
In these instructions, we perceive no just ground of exception on the part of the plaintiff in error. The charge concedes, that to make the subscription binding upon Gleaves, there must have been not only an acceptance of the charter, but that he must have concurred in such acceptance. By the terms of the charter, any Jme of the persons named therein — being a majority of those intended to be incorporated- — -are made competent to organize the company, and consequently possessed the power to accept the charter. And it would seem that a subscription for stock, made by Gleaves after the act of incorporation, though before the regular organization of the c^pany, but made with a view to, and in anticipation of a^subsequent organization, would be binding on him £^^»a regular organization under the charter, alth<|Sig]^ML.’e may have been no express concurrence on his jBK Hi the acceptance of the charter and organizatiorjof the company. It would be sufficient in such case, jrto say the least, that he had not, prior to the organization, expressly dissented and repudiated the subscription. An acceptance of the charter by a majority of the company, conferred upon Gleaves all the privileges of a member of the corporation. The subscription thereby became invested with the character and force of a contract, and the interest acquired by Gleaves in the stock of the corporation, and the profit to be derived therefrom, formed a sufficient consideration to enable the company to *496 recover the amount subscribed, and to preclude him from setting up tlie want of mutuality, or of consideration. So that upon this point,'’.® there be error in the charge, it is against the defendant in error. See Angel & Ames on Corporations, ecli ' of,. 1852, § 523.
It is clear that there is no error in the proposition that the notice calling a meeting of corporators, for the express purpose of a regular organization of the company under the charter, was an acceptance of the charter. The act of making such call must of necessity have been preceded by a determination to accept the charter; no other conclusion is admissible. The acceptance of the charter may be inferred from acts done in pursuance of its provisions. It is not indispensable to show a vote of acceptance, or written agreement' to accept. II)., § 83.
It has been heldj^hat a charter beneficial to a corporation ma^:h^®resumed to have been accepted, and an express a|[^Hance is not necessary. 1 Pickering’s Bep., 344.';. Jj‡
There ismil^Bror in the record, and the judgment is affirmed. ■