# TORBETT v. JONES.

Eastern Section.   June 15, 1935.

Petition for Certiorari denied by Supreme Court, October 12, 1935.

H. G. Morison, Jr., and C. E. St. John, both of Bristol, for appellant.

Miller, Miller & Martin, of Johnson City, for appellee.

AILOR, J.  Complainant filed her original bill in the chancery court at Bristol, for the purpose of enjoining the prosecution of a certain suit at law instituted by W. R. Jones, receiver for E. S. Ligon, Inc., seeking to collect the sum of $507.09 claimed to be due on open account.  It was alleged in the bill that, while the action at law was on an open account, the amount alleged to be due arose under a certain written contract executed by complainant; that the contract in question resulted from a visit made by Captain Crockett, the authorized representative of Blackstone Military Academy, to the home of complainant at Bristol for the purpose of inducing her to send her son to said school; that when the total expense for the school year was stated to her, she informed said representative that it would be impossible for her to incur liability in that amount; that, thereupon, said Captain Crockett proposed to her a plan whereby the total expenses might be reduced by allowing credit to her son for work which the school would provide for him; that these allowances for work would reduce the necessary expenses to the sum of $35 per month for the nine-month school term; that she agreed to this arrangement, and said Captain Crockett pretended to indorse this contract and agreement on the back of the note or written contract; that said written agreement was delivered to and retained by said representative, Captain Crockett, and that the same is now in the hands of the Blackstone Military Academy or its successors, but that complainant does not have a copy of said contract; that pursuant to said agreement complainant sent her son to said school, and began making the monthly payments of $35, and continued to pay same until she had paid all but two installments; that she did not pay the last two installments, when said school had failed, and refused to give to her son credits earned by him, and which it represented it would give.  She charged in her bill, upon information and belief, that said school was not an accredited school, as it had advertised, and the work done at such school was not accepted by other schools; that she was informed by said representative of said school that it was an accredited school, and that the work done by her son at said school would receive full credit at any other school; that she relied upon said representation as true, but that said representations were not true; that the work done by her son was a complete loss to him, and that the acts of said representative of said school operated as a fraud upon her; that these facts were known to said Blackstone Institute and the complainant, and for this reason it sought to enforce an action on account, rather than to sue on the written contract signed by complainant.  Complainant did not spe-

cifically plead failure of consideration, but she did plead facts and circumstances tending to show failure of consideration, and did in substance plead such defense.

A temporary injunction issued upon the prayer of the bill, with provision that complainant confess judgment in the law court for the amount claimed, conditioned that execution would be stayed until a final disposition of the case before us.

The defendant filed his answer, admitting that the complainant had entered into a written contract with Blackstone Military Academy, but it was not filed with the answer as was demanded in the bill. The answer denied each and every material averment of the bill, and demanded strict legal proof of same. It was then averred that under the terms of the contract signed by Mrs. Torbett she obligated herself to pay a fee of $25 for reservation of room, registration fee, etc., $650 for board, tuition, books, laundry, cleaning and pressing, and her monthly quarter master account as provided in the catalog of the school; that said amounts were payable, $25 during the first term of school, $200 during the summer of 1931, and the remainder of same at the rate of $35 per month beginning September 17, 1930. It was alleged in the answer that the defendant took charge of the assets of said school on March 4, 1931, pursuant to proceedings in the nature of a general creditors' bill pending in the circuit court of Nottoway county, Virginia; that he made frequent requests of complainant to pay according to the provisions of her written contract, but that she did not answer any of said letters, and never made any objection to the correctness of the statement of account as contained in the various letters written to her. The answer was not verified by oath.

Thereafter on June 23, 1934, complainant filed an amendment to her original bill in which she interposed as further defenses: First, that, at the time she executed the contract in question, she was sick and by reason of facial paralysis unable to read the contract; that said Captain Crockett, acting as the agent of Blackstone Military Academy informed her that the full extent of her liability would be $35 per month; that he turned the contract over and informed her that he was writing this provision on the back of same; that she labored under the impression that said provision was so written upon the contract until reading the same during the progress of this suit. She averred that she fully trusted said agent and representative, and complainant could not read said contract by reason of her disability; that her signature was procured to said contract by fraud; and that the same was void for that reason. She also specifically interposed the defense of failure of consideration, in that said school was not an accredited school and work done there by her son was a complete loss so far as his educational progress is concerned; that it would be necessary for him to take the same work over at an ac-

credited school, in order to continue his education. The prayer of the amendment sought to have the contract declared void for the reasons set out, and to have the temporary injunction issued made permanent, and for general relief.

Defendant filed his answer to the amended bill, denying every charge of fraud, and failure of consideration, and denied generally that complainant was entitled to any relief in the cause.

In a memorandum opinion filed, the chancellor found that the contract signed by complainant contained the following on the back by way of indorsement:

"$650.00 to include board, tuition, fees, books, laundry, cleaning and pressing.

"$35.00 per month beginning Sept. 17th, for 12 months.

"$200.00 payable during summer, 1931.

"$25.00 App. fee to be paid during 1st term.

"Uniforms, barber work, shoe repair and personals to be charged.
"F. A. C."

The chancellor further found in conformity with the contention of complainant that she was to be given a credit of $100 for work to be done by her son during the school year, and an additional $200 to be paid by her son during the next summer. Complainant testifies that this was the agreement she entered into, and that Captain Crockett pretended to write the agreement upon the reverse side of the application. And she is confirmed in her contentions by the statement of Captain Crockett. In response to an interrogatory propounded by solicitor for defendant asking him to state all of the facts in connection with the execution of the contract of enrollment between Mrs. Torbett and Blackstone Military Academy, he responded:

"Mrs. Torbett stated that she could only pay $35.00 per month so I finally arranged for her son C. C. to pay $200.00 during the next summer, but this did not take care of the total cost so I gave her a $100.00 reduction for work to be done in the Quartermaster Dept. When school opened I found the job was not available, so I wrote Mrs. Torbett stating that the contract would stand as agreed upon even though I could not get the job for the boy."

We think the frankness with which Captain Crockett details the true contract entered into refutes any idea that he intentionally tried to practice a fraud upon complainant; that it was his intention to properly embody their agreement in the indorsement on the back of the application blank. However, without intending to do so, he entered an indorsement on the application blank which failed to properly set forth the agreement, its enforcement as written would be unconscionable and fraudulent as against complainant. Captain Crockett was sent out by said Blackstone Military Academy as its duly authorized agent; he was apparently clothed with authority to

enter into the very agreement which he made. By suing upon the contract made with complainant, his authority to fix the terms of payment, etc., has been confirmed by defendant as receiver for the defunct corporation. He should have entered the true agreement upon the application blank, and this court will treat that as done which should have been done, according to the evidence offered by defendant as above set out. The act of Captain Crockett in not entering the true contract upon the application operated as a virtual fraud, though unconnected with any selfish or evil design. Complainant was at the time of entering into the agreement in question laboring under the disability of physical weakness, which had seriously impaired her vision. Captain Crockett was field agent for the school at the time, and was also a teacher as appears from the catalog of the school. And when he told her that he was writing their agreement on the back of the application, she trusted him to do so. She made no agreement other than that testified to by herself and Captain Crockett.

It is earnestly insisted in this connection that Captain Crockett had no authority to make the contract insisted upon by complainant; that his authority was limited to the provisions of the catalog. We do not think this position tenable under the facts presented in this case. An agent is authorized to act within the apparent scope of his authority, though this may be different from his actual powers. Southern R. Co. v. Pickle, 138 Tenn., 238, 197 S. W., 675; Co-operative Stores v. Fidelity & Guaranty Co., 137 Tenn., 609, 195 S. W., 177.

The very nature of the enterprise in which Captain Crockett was engaged, we think, would imply that he was clothed with certain discretion in the selection of students and in providing for meeting the financial burden incurred by the parent in entering them in school. What is meant by "course of employment" has been defined to mean that the act of an agent is within the course of his employment when the agent in performing it is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose. Howell v. Consolidated Cas. Co., 6 Tenn. Civ. App., 426.

Certainly Captain Crockett was attempting to promote the business of his principal in persuading complainant to send her son to Blackstone. It is a well-known fact that schools have available certain work which students may do in order to earn part of their expenses. This is all that was involved in the contract actually agreed upon between complainant and Captain Crockett, and it was obviously within the apparent scope of his authority. And this being true, the receiver stood in the same position as the corporation; he acquired no right superior to that of the corporation before insolvency. A receiver succeeds to the rights of the corporation and

the authority to control its property and collect and preserve its assets. 23 R. C. L., sec. 47.

For the reasons above set out, we concur in the findings of fact by the chancellor, and in the conclusions reached by him in so far as the questions raised by the appeal of defendant is concerned. And all errors assigned by defendant are overruled.

In the above connection it might be observed that numerous citations of cases upholding the rule prohibiting the introduction of parol evidence to vary the provisions of a written contract are urged upon us. The various authorities urged in support of this rule are sound, but the rule prohibiting the introduction of parol evidence to vary the provisions of a written contract are not controlling of the facts in the case before us. Defendant offered proof to show that the contract was as contended for by complainant, and having done so is in no position now to refute his own evidence or avoid the consequences of same. To give effect to the contention of defendant would result in a court of conscience admitting that it was impotent to correct a wrong established by the evidence of both complainant and defendant. Such is not the case. Our courts of chancery have great latitude of jurisdiction in granting relief against fraud of every character, and are fully authorized to grant relief in this cause. .

Complainant assigns as error the action of the chancellor in refusing to limit the liability of the complainant to $35 per month for nine months, and also in not holding that there had been a complete failure of consideration. We now notice these two questions.

It is not necessary to further review the evidence in connection with the first question above raised. The chancellor found that the contract did not limit the payments to be made by complainant to nine months, but that the contract was for a definite amount less certain definite credits. These matters have been gone over in detail in connection with errors assigned by defendant. We think the conclusions of the chancellor are amply justified by the preponderance of the proof, and this assignment is overruled. It is finally insisted that the consideration for the contract failed and that defendant is entitled to no relief in any event for that reason. This raises a very serious question.

A copy of the catalogue of the school for the school year 1930-1931 is with the record, being designed as "Exhibit I" to the deposition of C. C. Crockett. This catalogue does not state that the school was a member of the Southern Association of Preparatory Schools, but it contains the following statement:

"The work done at Blackstone has been found to be of such high grade that our graduates are accepted at practically all universities and colleges without examination. We are very proud of the accredited list of the Academy and will use our efforts to enlarge and maintain this from year to year."

Captain Crockett says he did not represent to Mrs. Torbett that the school was a member of the Southern Association. It is the contention of both Colonel Ligon and Captain Crockett that the school was dropped from the association because of the fact that its name was changed. This may be literally correct, but the circumstances arouse some suspicion that the change in name might have been occasioned by financial difficulties which were in fact responsible for the loss of standing as a member of the association. Colonel Ligon admits that the school had been in financial difficulties for several years. Captain Crockett, while admitting that the school had been dropped from the accredited list, insisted that the credits could be used. It is further admitted that his credits could not be used in any of the high schools at Bristol, where C. C. Torbett lived, and that he would be required to take an examination on all of the work done by him at Blackstone, if he desired to enter any of said schools, and further that such a procedure was for all practical purposes an impossibility. In other words, it is in only the rarest of cases that a student is able to pass examinations in a satisfactory manner in all subjects studied over a course of a school year, as a preliminary requisite to entry into another school.

R. B. Rubins, superintendent of schools in Bristol, Tennessee, testified that Blackstone Military Academy was not on the accredited list for the year of 1931; that credits were not accepted from schools not on such list. This accredited list is the only criterion used by him in passing upon, admitting or refusing admittance of students from various schools. Without this standing of the school from which a student comes, it is necessary for him to take an examination. T. H. Tyler, instructor at King College, Bristol, knows the reputation of Blackstone Military Academy, and knows that it was dropped from the Southern Association of Preparatory Schools due to the utter failure in meeting the requirements of the association. All schools attempt to become members of this association. The very fact that Blackstone was formerly a member of this association, and that it was dropped from same involuntarily, is an indication of the desirability of membership therein. This is further demonstrated by the fact that renewed membership was sought after the lapse of a year from the time it was dropped. Membership in said association represented a recognized scholastic standard sought by all schools, and one falling below that standard necessarily operated under a handicap.

The question of education is one of great concern to all. Great care must be exercised in the education of youth. This record speaks very clearly the serious consequences to a young man from attending school for a full year, and then be denied credit for the work done by him by reason of the fact that the school in which he had confidence and the scholastic requirements of which he had fully

met had not itself met the standards of education set up by other schools in its vicinity. Those who would maintain educational institutions are obligated to maintain them so as to inspire confidence in students and not to destroy confidence. C. C. Torbett completed the work required of him, yet he was not given his credits, and if he had been given the credits he could not have used them. The failure to give the credits was based upon the failure of complainant to pay the amount set out in a written contract, which we have held she was not obligated to pay. There was a failure of the consideration for the contract, so far as all practical purposes are concerned. It is true that Colonel Ligon testifies that Georgia Military Academy would accept students and allow credits acquired at Blackstone, but it is not shown that Georgia Military Academy has any better rating than Blackstone. In other words, it is not shown that credits from Blackstone are good at any school of recognized standard; it is shown that the credits are not good in schools of standard rating. It is true that the burden of proving failure of consideration rests upon the one setting up that defense. National Tel. Inst. v. Cassanova, 3 Tenn. Civ. App., 175.

However, when it appears that there has been a failure of the consideration as contemplated within the meaning of the contract as entered into between the parties, and as contemplated by the obligation, imposed by the provisions of the contract, the contract becomes unenforceable. The son of complainant derived no practical benefit from the contract in question; complainant has already expended considerable money on the contract, all of which is a complete loss so far as attaining the object for which it was spent is concerned. Under these circumstances, we think there has been a failure of consideration within the meaning of the law so as to relieve complainant from further liability, under the contract. This assignment of error will be sustained and a decree entered here making permanent the injunction heretofore granted, and modifying the decree of the chancellor to the extent indicated. Otherwise the decree of the lower court will be affirmed.