Mr. and Mrs. Thomas LOVELL and Dust-Tex Rental Service, Inc., Plaintiffs-Appellants, Cross-Appellees,

v.

SONITROL OF CHATTANOOGA, INC. and Sonitrol Corporation, Defendants-Appellees, Cross-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Nov. 10, 1983.

Application for Permission to Appeal Denied by Supreme Court Jan. 30, 1984.

R. Vann Owens and Van A. French, Chattanooga, for Mr. and Mrs. Lovell and Dust-Tex Rental Service, Inc.

Robert P. Rayburn, Chattanooga, for Sonitrol of Chattanooga.

James R. Buckner, Chattanooga, for Sonitrol Corp.

## OPINION

GODDARD, Judge.

In this case which originated in the Circuit Court for Hamilton County, Dust-Tex Rental Services, Inc., Plaintiff-Appellant, Cross-Appellee, obtained a judgment against Sonitrol of Chattanooga, Inc., and Sonitrol Corporation, Defendants-Appellees, Cross-Appellants, in the sum of $4000. This figure represented loss of profit to the Plaintiff as a result of damages from a fire alleged to have been incurred because of the failure of a warning system (the primary components of which were manufactured by Sonitrol Corporation and installed by Sonitrol of Chattanooga) to timely detect and warn of the presence of a fire on the premises leased by Dust-Tex and owned by Thomas Lovell and his wife, also Plaintiffs-Appellants, and Cross-Appellees. The jury did not make an award for damages to the building, loss of inventory and other items, some of which were owned by Dust-Tex and others by Mr. and Mrs. Lovell. By their principal issue the Plaintiffs contend that the "verdict as to damages is inconsistent and appears to have been given under the influence of passion, prejudice or caprice, thus entitling Plaintiffs to a new trial on the issue of damages."

Sonitrol of Chattanooga and Sonitrol Corporation raise as an issue that the contract entered into between Dust-Tex and Sonitrol of Chattanooga contains a valid contractual agreement limiting damages "due to a failure of services" to $250. Sonitrol Corporation also raises an additional issue contending that "The verdict holding Sonitrol Corporation of Chattanooga, Inc., to be the

apparent agent of Sonitrol Corporation is contrary to the evidence and to the law."[1]

At the outset we observe that the judgment appealed from may not be final in that the Trial Court reserved the question of Sonitrol of Chattanooga's liability on the cross-action brought by Sonitrol Corporation. However, we deem it appropriate to consider the appeal, and will treat it as an interlocutory one, suspending all uncomplied-with rules governing such an appeal.

On February 4, 1977, a fire was discovered at a building owned by Mr. and Mrs. Lovell, which housed Dust-Tex Rental Services, Inc., a janitorial supply concern, the common stock of which was likewise owned by Mr. and Mrs. Lovell. The fire originated in a van which had been parked in the building along with three other vehicles on the preceding evening.

The Plaintiffs did not contend that the Defendants were in any wise responsible for the initial fire, but predicated their theory of recovery upon the failure of smoke detection equipment which was installed ancillary to a security system by Sonitrol of Chattanooga. Without going into great detail, the proof is conflicting as to whether the smoke from the fire which smoldered a period of time in the van was sufficient to activate the smoke alarm, which in turn should have been picked up by microphones and transmitted to a monitoring center.

The theory of liability as to Sonitrol Corporation was that Sonitrol of Chattanooga was its agent.

The jury, after deliberating some eight hours, reported as follows:

THE FOREMAN: We, the jury, find that the Plaintiffs are entitled to recover of Sonitrol Corporation of Chattanooga and Sonitrol Corporation based upon the theories of negligence of Sonitrol Corporation of Chattanooga in installing and maintaining the system in question.

We also found that Sonitrol Corporation of Chattanooga is the apparent agent for Sonitrol Corporation. We, the jury, find for the Plaintiffs and we assess their damages as follows: No damages for repairs to building or repairs to building fixtures. No damages for cleaning building and damaged inventory. No damages for electrical repairs. No damages for inventory. No damages to other vehicles. No damages for freight bills. $4,000 for lost profit.

■ It is the insistence of the Plaintiffs that the verdict is inconsistent in that they recovered the full amount testified to by Mr. Lovell as to the loss of profits while the business was inoperable, but did not grant any damages for obviously more substantial damages, which he also testified to:

| | | |
|---|---|---|
| (1) Repairs to building | $39,068.71 |
| (2) Repairs to building fixtures and replacement costs | 12,765.57 |
| (3) Cleaning building and damaged inventory | 5,407.50 |
| (4) Electrical repairs | 16,242.64 |
| (5) Inventory | 68,499.25 |
| (6) Damage to other vehicles | 583.92 |
| (7) Freight bills | 1,235.46 |

The Defendants make two contentions to counter the Plaintiffs' argument. First, they say the damages would be speculative in that the only amount for which the Defendants would be liable were those occasioned by the delay in detecting the fire, and that the Plaintiffs submitted all of the damages for the fire except that occasioned to the van where it originated, leading the jury to speculate which damages, if any, resulted from the delay. This argument would be appealing except for the fact that the jury gave the full amount of the damages proved as to the one item—loss of profits, which in our view was certainly as speculative as any of the others claimed.

Next, the Defendants argue that because Mr. Lovell was claiming replacement of inventories and repairs for a number of years after the fire, even up to and including a few weeks before trial, the jury was

---

**1.** It is arguable that this assignment is too general to be considered, but we prefer to treat it as contending that there is no material evidence to justify a verdict on the theory of apparent agen-

cy. Moreover, we have authority under Rule 13 of the Tennessee Rules of Appellate Procedure to notice error not called to our attention.

justified in rejecting any of his testimony regarding other damage. While we concede that Mr: Lovell might have as to some items exaggerated both the value of his property and the extent it was damaged, we do not believe a jury is justified in finding no damages in light of the obvious substantial ones sustained.

We conclude that the verdict returned by the jury is inconsistent. A recent Tennessee case, *Slaten v. Earl Campbell Clinic Hospital,* 565 S.W.2d 483, 484 (Tenn.1978), spoke to the subject as follows:

> Probably the leading case in this state on inconsistent verdicts is *Loveman Co. v. Bayless,* 128 Tenn. 307, 160 S.W. 841 (1913). *See also International Corp. v. Wood,* 8 Tenn.C.C.A. (Higgins) 10 (1918); *Howard v. Haven,* 198 Tenn. 572, 281 S.W.2d 480 (1955).

> Decisions subsequent to *Bayless* have developed the rule that when inconsistent verdicts are rendered in master-servant and similar cases, neither the verdict in favor of the employee nor the verdict against the employer can be permitted to stand. *Berry v. Foster,* 199 Tenn. 352, 287 S.W.2d 16 (1955). In the *Berry* case this Court quoted approvingly from *Gray v. Brooklyn Heights Ry.,* 175 N.Y. 448, 450, 67 N.E. 899, 900 (1903) as follows:

> " 'When, however, the two actions are thus tried together and inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts to be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found.' " 199 Tenn. at 356, 287 S.W.2d at 18.

> Again, in *Milliken v. Smith,* 218 Tenn. 665, 405 S.W.2d 475 (1966) this Court stated the rule as follows:

> "The obligation of every jury is summarized in the oath taken by its members to render a true verdict according to the law and the evidence. This ap-

plies whether the jury is trying one or more cases. And where it plainly appears from the verdicts returned by a jury that it has not fulfilled this obligation, but acting upon considerations other than those presented in the law and the evidence has returned irreconcilably conflicting verdicts, it is the duty of the trial court to order the jury to consider further with respect to these verdicts, and if it refuses (which we doubt will ever be the case), to order a mistrial, otherwise this Court must reverse." 405 S.W.2d at 477.

See also *Southern Ry. v. Butts,* 214 Tenn. 328, 379 S.W.2d 794 (1964); *Alabama Highway Express, Inc. v. Luster,* 51 Tenn.App. 691, 371 S.W.2d 182 (1963).

It follows insofar as this issue is concerned that the judgment is reversed, and the Plaintiffs are granted a new trial.

■ An ancillary question to this issue is whether the new trial should be on the question of damages alone or as to all features tried before. It is true that the jury verdict found negligence on the part of Sonitrol of Chattanooga, but in view of the fact that they were only awarded a pittance insofar as their total claim for damages was concerned, we think the better practice under the facts of this case is to let the matter be re-tried as to all issues.

Both Defendants insist that the agreement signed at the time the equipment was installed, containing exculpatory language, bars a judgment against them in excess of $250. The instrument in question and two addendums later executed were signed by Dust-Tex.

It is the Plaintiffs' contention that this agreement only applied to the installation of the security system and not to the fire detection equipment which was ancillary thereto.

While the author of this opinion seriously questions the propriety of all such agreements from a public policy standpoint (see dissent in *Petry v. Cosmopolitan Spa Intern, Inc.,* 641 S.W.2d 202 (Tenn.App.1982), the doctrine is firmly entrenched in Tennes-

see law, and except for certain narrow exceptions—common carriers, *Railway Co. v. Lumber Co.*, 130 Tenn. 354, 170 S.W. 591 (1914); *Railway Co. v. Saulsbury*, 115 Tenn. 402, 90 S.W. 624 (1905); "professional person operating in an area of public interest and pursuing a profession subject to licensure by the state," *Olson v. Molzen*, 558 S.W.2d 429 (Tenn.1977)—such agreements have been universally upheld. *Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188 (Tenn.1973); *Moss v. Fortune*, 207 Tenn. 426, 340 S.W.2d 902 (1960); *Dixon v. Manier*, 545 S.W.2d 948 (Tenn.App.1976); *Trailmobile, Inc. v. Chazen*, 51 Tenn.App. 576, 370 S.W.2d 840 (1963).

█ In the present case the Court first sustained the motion for partial summary judgment and thereafter reversed himself and overruled it. It should be remembered that this was a motion for partial summary judgment, and his ruling was not conclusive on the question, but merely that the undisputed proof did not show that the Defendants were entitled to judgment as a matter of law. In light of Mr. Lovell's testimony regarding the intent of the contract and the testimony from Mr. Hobson and Mr. Whirley, Vice-Presidents of Sonitrol, which could be interpreted to mean that the contract which contained the exculpatory clause was intended only to apply to the intrusion alarm service, we think the Court acted properly. Of course, we hasten to add, his determination was not conclusive on the question, and the Defendants were free to further litigate the question at trial.

█ Before leaving this point, we note that even if the exculpatory clause was intended to include the smoke alarm service, it would not be binding as to Mr. and Mrs. Lovell, who were not parties to the agreement.

One final issue needs to be resolved. Sonitrol Corporation contends there is no evidence which will justify a finding that Sonitrol of Chattanooga was its apparent agent. The proof shows that Sonitrol Corporation was a manufacturer of the equipment, and that it is sold to distributors who in turn sell to dealers, such as Sonitrol of Chattanooga. In the instant case the distributor was Sonitrol of Tennessee, and it was the corporation that Sonitrol of Chattanooga dealt with in obtaining the franchise to operate. Mr. Lovell testified that he had never heard of Sonitrol Corporation at the time he entered into the contract and, as we understand the proof, only learned of Sonitrol's involvement after the fire.

The doctrine of apparent authority has been addressed by a number of Tennessee cases, the most recent of which is *V.L. Nicholson Co. v. Transcon Inv.*, 595 S.W.2d 474 (Tenn.1980), wherein the Court said the following (at page 483):

> In order to determine whether an agency has been established, the relationship of the parties is scrutinized, and the facts will establish agency whether the parties so intended or understood. *Rich Printing Co. v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361 (Tenn.App.1959). "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing ... such authority as a reasonably prudent man, using diligence and discretion, in view of the party's conduct, would naturally suppose the agent to possess." Id. [330 S.W.2d] at 376. If it can be shown that the plaintiff held the agent out as having such authority or permitted him so to act, and if the person dealing with the agent "knew of the facts, and, acting in good faith, had reason to believe, and did believe, that the agent possessed the necessary authority," then the general rule on apparent authority may be applied. Id.

We first observe that our research inclines us to the belief that apparent authority is a contract rather than a tort theory. All the cases we have examined, save perhaps two,[2] deal with the authority of the

---

**2.** One other case, which is neither tort nor con-

tract, deals with an agent's apparent authority to

alleged agent to enter into a contract. (See appendix for list of these cases.)

In the first of the possible exceptions, *Southern Railway Co. v. Pickle*, 138 Tenn. 238, 197 S.W. 675 (1917), the plaintiff, who was a passenger on a train, sought damages for her wrongful expulsion. However, the case turned on whether the conductor had the authority to enter into an agreement with the plaintiff to permit her to travel at a reduced fare.

In the other case, *McCoy v. Willis*, 177 Tenn. 36, 145 S.W.2d 1020 (1940), the doctrine was seemingly applied to make the owner of the vehicle liable for its apparent agent's negligent operation of the vehicle. The concluding paragraph [3] of the opinion, however, casts doubt as to whether apparent agency is the real basis of the opinion, and also seems to recognize that apparent agency is not a tort theory (177 Tenn. at page 40, 145 S.W.2d 1020):

> This case differs from those holding apparent agency can not be made the basis of a tort action. Here the apparent principal and the apparent agent were parties to a conspiracy to do an unlawful act. The tort was committed in prosecution of the conspiracy and all parties are liable. *Brumley v. Chattanooga Speedway & Motordrome Co.*, 138 Tenn. 534, 198 S.W. 775 [1917]; 15 C.J.S., Conspiracy, §§ 17, 18, p. 1028.

■ Assuming *arguendo* that the doctrine may be properly advanced in a tort case, in light of the fact that Sonitrol Corporation made no representations relative to the agency of Sonitrol of Chattanooga, and Mr. Lovell had no knowledge of the alleged principal, we cannot see how apparent agency can be shown, and for this reason the issue is decided favorably to Sonitrol Corporation, and the suit sofar as it is concerned is dismissed.

For the foregoing reasons the Trial Court is reversed, the case as to Sonitrol Corporation dismissed, and as to the other

Defendant remanded for a new trial. Costs of appeal are adjudged against the Plaintiffs and Sonitrol of Chattanooga equally.

SANDERS and FRANKS, JJ., concur.

### APPENDIX

*Franklin v. Ezell*, 33 Tenn. 496 (1853)

*Cleveland Nat. Bank v. Bryant*, Tenn.Ch. App., 54 S.W. 73 (1899)

*Independent Order of Foresters v. Cunningham*, 127 Tenn. 521, 156 S.W. 192 (1912)

*Oppenheimer v. Woolwine*, 4 Tenn.C.C.A. (Higgins) 134 (1913)

*Rose & Company v. Dysart*, 8 Tenn.App. 325 (1928)

*Torbett v. Jones*, 19 Tenn.App. 307, 86 S.W.2d 898 (1935)

*Umstattd v. Metropolitan Life Ins. Co.*, 21 Tenn.App. 312, 110 S.W.2d 342 (1937)

*Industrial Plumbing & Heating Supply Co. v. Carter County Bank*, 25 Tenn. App. 168, 154 S.W.2d 432 (1941)

*Bailey v. Life & Casualty Ins. Co. of Tennessee*, 35 Tenn.App. 574, 250 S.W.2d 99 (1951)

*Rich Printing Company v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361 (1959)

*O'Shea v. First Federal Savings & Loan*, 218 Tenn. 619, 405 S.W.2d 180 (1966)

*Reed v. Maryland National Ins. Co.*, 222 Tenn. 579, 439 S.W.2d 256 (1969)

*V.L. Nicholson Co. v. Transcon Inv.*, 595 S.W.2d 474 (Tenn.1980)

---

be served with process. *North-South Freightways, Inc. v. Slaten*, 28 Tenn.App. 75, 186 S.W.2d 336 (1944).

3. Curiously, although this paragraph appears in the Tennessee Reports and the Tennessee Decisions, it is omitted from the South Western Reporter.