Monty R. YOUNG, Personal Representative of the Estate of Michael K. Young, Deceased, Appellant (Plaintiff below),

v.

TRI–ETCH, INC. d/b/a Sonitrol Security Systems of Muncie, Inc., Appellee (Defendant below).

No. 18S02–0211–CV–616.

Supreme Court of Indiana.

June 26, 2003.

James R. Fisher, Debra H. Miller, Fred R. Biesecker, Indianapolis, IN, Attorneys for Appellant.

Andrew P. Wirick, Indianapolis, IN, Attorney for Appellee.

William F. Conour, Ronald S. Todd, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Trial Lawyers Association.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

A liquor store employee was abducted and brutally beaten to death by a late-night robber. The employee's estate sued the store's alarm service for damages. The store's contract with the alarm service limited the time in which the store could sue the alarm company. We hold this time limit does not apply to the estate because the employee was not a party to the contract.

*Background*

On July 6, 1992, Tri–Etch, Inc., entered into a written contract with MLS, Inc. (the owner of Muncie Liquors), to monitor the security alarm system that Tri–Etch sold to and installed at the Muncie Liquors' store on Tillotson Avenue in Muncie. Tri-Etch's obligation under the contract was expressly limited to monitoring the alarm system while it was activated. The contract also contained a clause requiring that any lawsuit against Tri–Etch be filed within one year of the event giving rise to the lawsuit.[1]

---

1. Paragraph 13, page 2 of the contract reads: All claims, actions or proceedings, legal or equitable, against DEALER [Tri–Etch] must be commenced in court within one (1) year after the cause of action has occurred or the act, omission or event occurred from which the claim, action or proceeding arises, whichever is earlier, without judicial

In addition, there was evidence that Tri–Etch provided an additional service to Muncie Liquors not described in the contract. If the store's alarm has not been set within a certain amount of time after the usual closing time for the store, Tri–Etch would call the store. If no employee answered, Tri–Etch would notify the store's general manager and then call the police. The store's usual closing time was midnight. In the event the alarm was not set by this closing time, Tri–Etch customarily notified the Tillotson store or, if no answer, the general manager, by 12:30 a.m.

On August 12, 1997, Michael Young, an employee at the Tillotson store, worked the closing shift. At some time after 11:50 p.m. and before Young could activate the store alarm, Michael Moore robbed the store at gunpoint, kidnapped Young, drove him to a nearby park, beat him severely, and left him tied to a tree in the park. The alarm was never set. Tri–Etch did not call the store or the general manager to notify Muncie Liquors that the alarm had not been set until approximately 3:15 a.m. Young was found alive at approximately 6:00 a.m. on August 13, 1997, but

he died later that day as a result of his injuries. The estate presented some evidence that had Young been found earlier, he might have survived.

The estate filed a wrongful death action on August 6, 1999, claiming Tri–Etch had assumed a duty to notify Muncie Liquors by 12:30 a.m. if the alarm was not activated. Tri–Etch filed a motion for summary judgment, asserting that Young's wrongful death action was barred by the one-year limitations period contained in the contract between Muncie Liquors and Tri–Etch mentioned *supra* and set forth in footnote 1. The trial court found that Young's claim was governed by the terms of the contract and that more than one year had passed between Young's murder and the filing of the complaint. It granted summary judgment for Tri–Etch based upon the service contract's one-year limitation on actions.[2]

The Court of Appeals affirmed, finding that the one-year liability limitation applied to the estate's claim and if the limits did not apply "greater rights [would be granted to Young] under the contract than the parties themselves had under that contract." *Young v. Tri–Etch, Inc.*, 767 N.E.2d 1029, 1034 (Ind.Ct.App.2002). We

extension of time, or said claim, action or proceeding is barred, time being of the essence of this paragraph.
(App. at 55.)

2. There was disagreement at oral argument over whether the trial court granted summary judgment to Tri–Etch on more than one ground. Tri–Etch sought summary judgment on several bases: (1) that the contract required any claims to be filed within one year; (2) that the contract limited any damages to the lesser of one-half year's monitoring payments or $500; (3) that Young was not a third party beneficiary; and (4) that Tri–Etch owed no duty of care to Young as a matter of tort law. As will be discussed below, the trial court found that any claim that Young might have against Tri–Etch sounded in contract and not tort on the authority of *Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55

(Ind.Ct.App.1984), *trans. denied, disapproved on other grounds, Mitchell v. Mitchell*, 695 N.E.2d 920, 922 (Ind.1998), and that the one-year limitation provision in the contract precluded Young's recovery. (Conclusions of Law ¶ 11, 13, App. at 15, 16.) As such, it was unnecessary for the trial court to, and the trial court explicitly did not, rule on the damage limitations and third party beneficiary arguments. (Conclusions of Law ¶ 11, App. at 15.)

More importantly, because the trial court was of the view that Young had no tort claim against Tri–Etch, the trial court did not rule on whether Tri–Etch had a duty to Young as a matter of tort law. Because the courts below have not addressed the question of Tri–Etch's duty, if any, to Young as a matter of tort law, that issue is not before us.

granted the estate's petition to transfer. 783 N.E.2d 702 (Ind.2002) (table).

### Discussion

The plaintiff estate contends that defendant Tri–Etch was guilty of negligence, a tort. Tri–Etch argues that any responsibility it has to the estate is solely derivative of and governed by the terms of the contract between it and Muncie Liquors and that those terms include a requirement that any lawsuit brought against it be filed within one year.

The trial court and Court of Appeals both took the view that any rights the estate had "were derivative of the business relationship between Muncie Liquors and Tri–Etch" and that the one-year limitation period applied. 767 N.E.2d at 1034.

The reasoning of both courts was based on their respective readings of a Court of Appeals case, *Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55 (Ind.Ct. App.1984), *trans. denied, disapproved on other grounds, Mitchell v. Mitchell*, 695 N.E.2d 920, 922 (Ind.1998).

In *Orkin*, the plaintiff asked Orkin Exterminating Co. to inspect her home for insect infestation. After insects were discovered, plaintiff signed a "Subterranean Termite Agreement" which provided for an initial treatment and Orkin's "Continuous Protection Guarantee" for an annual fee. Upon treatment, plaintiff received the "Lifetime Re-treatment Guarantee" which guaranteed additional treatments at no cost if termites reappeared during the guarantee period. This agreement expressly limited Orkin's liability to re-treatment only and expressly waived any liability for termite damage to the structure or the contents. Plaintiff discovered continued termite damage and sued Orkin for negligent breach of contract. The trial court entered judgment for the plaintiff, finding that Orkin's breach of duty constituted "tortious malfeasance," and allowed the plaintiff to recover damages in tort.

*Orkin*, 466 N.E.2d at 58. The Court of Appeals reversed the trial court, noting that a "suit based in tort does not change the fact that Orkin's duty to [the plaintiff] is based on the contract." *Id.* In addition, "bringing a suit in tort does not allow [the plaintiff] to avoid the limitation of liability clause in the contract." *Id.*

Contrary to the Court of Appeals and trial court's findings, *Orkin* does not control in this case. *Orkin* involved a tort lawsuit between the two parties to a contract, under which both parties agreed to the liability limitation provision. The present case, however, involves a tort lawsuit between one of the original parties to a contract that contains a liability limitation provision and a nonparty who never agreed to the terms of the contract.

Guidance is more readily available from other jurisdictions than from Indiana precedent. Both *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986), and *Lovell v. Sonitrol of Chattanooga, Inc.*, 674 S.W.2d 728 (Tenn.Ct.App.1983), addressed the feasibility of tort claims against installers of security systems.

In *Scott & Fetzer Co.*, a fire started in the portion of a large warehouse that was rented by Montgomery Ward & Co., Inc. (Ward). Ward had an agreement with Burns Electronic Security Services, Inc. (Burns), for the installation and maintenance of fire-warning systems in Ward's rental space. This contract contained an exculpatory provision that limited Burns's liability "in actions brought by Ward[ ] or some party who had property stored in Ward['s] portion of the warehouse." *Scott & Fetzer Co.*, 98 Ill.Dec. 1, 493 N.E.2d at 1030. The detection equipment allegedly malfunctioned and the fire spread throughout the warehouse, causing extensive damage to Ward's property as well as property belonging to adjacent tenants. The adjacent tenants filed suits seeking recovery

based on Burns's alleged negligence. The court found that dismissal was not proper on the grounds that the contract between Burns and Ward contained an exculpatory clause. Rather, the court found that "the clear and explicit language of the contract [did] not require that it be construed as barring or limiting the rights of the adjacent tenants, nor [was] such intention expressed in unequivocal terms." *Id.* at 1027. Thus, the exculpatory clause found in the contract "[did] not affect Burns'[s] duty to the adjacent tenants." *Id.*

Likewise, in *Lovell* the Lovells owned property that was leased by Dust–Tex Rental Services, Inc. Dust–Tex had a contract with Sonitrol of Chattanooga for the installation of smoke detection equipment, within which was a provision that limited damages "due to a failure of services" to $250. *Lovell,* 674 S.W.2d at 729. A fire occurred on the rental property. It was alleged that the fire was incurred because the warning system failed to timely detect and warn of the presence of the fire. The appellate court found that in light of testimony regarding the intent of the contract coverage, summary judgment was not proper. *Id.* at 732. In reaching this determination, the court noted that "even if the exculpatory clause was intended to include the smoke alarm service, it would not be binding as to Mr. and Mrs. Lovell, who were not parties to the agreement." *Id.*

The written contract between Muncie Liquors and Tri–Etch, as outlined above, is expressly limited to the monitoring of the premises during the hours when the store is closed and the alarm is activated. Since Young was not a party to the contract, and thus never consented to the terms of the contract, the contract simply does not impose any obligations or limitations on him.[3]

Given that the plaintiff did not agree to the contract, the express terms of the contract do not serve to limit the estate's recovery opportunities. Rather, the contract's provisions do not apply to the estate under these facts. Consequently, summary judgment for Tri–Etch based on the contract's requirement that all actions on it be brought within one year of occurrence was not appropriate.

*Conclusion*

Having previously granted transfer pursuant to Indiana Appellate Rule 58(A), we now reverse the judgment of the trial court. We remand this matter to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.

---

**3.** On rehearing, the Court of Appeals held that because "Tri–Etch would have had no relationship with Young at all were it not for the service contract … the liability limitations in the contract are controlling over Young's claim against Tri–Etch." *Young v. Tri–Etch,* 773 N.E.2d 298, 299 (Ind.Ct.App.2002). However, this position contradicts well-established areas of law. For example, under workers' compensation law, the employment contract ultimately restricts the legal rights and obligations between the employer and the employee. However, it is quite common for an employer to then enter into a separate contract with a third person, whether for goods or services, which may contain its own set of liability limitations. The Worker's Compensation Act, however, does not limit employee actions against third persons, even though the employee would likely have no relationship with that third party if not for the contract the third party had with the employer. *See* I.C. 22–3–2–6; *see also Ross v. Schubert,* 180 Ind.App. 402, 388 N.E.2d 623, 627 (1979) (no indication that the Legislature ever intended to reach beyond the employment relationship so as to benefit a third party by limiting recovery as to that party).