CSX TRANSPORTATION, INC.,
Appellant–Defendant,

v.

Teddie Christine KIRBY and Randall R. Kirby, Individually and on behalf of minor children: Amanda Marie Kirby, Brent Enos Kirby, Jessica Marshall and Michael Ray Marshall, Appellees–Plaintiffs.

No. 84A04–9608–CV–324.

Court of Appeals of Indiana.

Nov. 25, 1997.

612

James D. Witchger, Robert A. Durham, Rocap, Witchger & Threlkeld, Indianapolis, for Appellant–Defendant.

Carl Paul Lamb, Carl Lamb and Associates, Bloomington, for Appellees–Plaintiffs.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

CSX Transportation, Inc. appeals the judgment in favor of Randy Kirby and Teddie (Kirby) Long, individually and on behalf of their minor children, (collectively "the Kirbys"), in their negligence action against CSX. We affirm.

### ISSUES

1. Whether the trial court erred in denying CSX's summary judgment motion.

2. Whether the trial court erred in denying CSX's motion for judgment on the evidence.

3. Whether the jury's verdict in favor of the Kirbys was contrary to both the law and the evidence.

4. Whether the trial court erred in refusing to give CSX's tendered Instruction Number Eight.

### FACTS

In 1987, the City of Terre Haute ("City") and CSX Transportation, Inc. ("CSX") entered into a written agreement wherein CSX agreed to replace railroad crossings throughout Terre Haute. The agreement provides in pertinent part as follows:

> SECTION 7. The Railroad shall be responsible for the maintenance of railway traffic during the progress of the work performed under this agreement, and shall furnish at project expense the necessary railroad personnel to safeguard its own operations as required by the regular operating rules of the Railroad. All work herein provided to be done by the Railroad shall be performed in such manner as not to interfere unnecessarily with the movement of traffic upon the highway. Any watchman or flagman necessary to protect or safeguard highway traffic shall be provided by the Municipality at its own cost. Any necessary closure of the highway to traffic during the progress of the work shall be made only with the approval of the Municipality. The Municipality shall furnish to the State an approved traffic control plan, prepared in accordance with the "Indiana Manual on Uniform Traffic Control Devices" for road closures or a lane closed due to crossing construction, to be attached hereto as Exhibit 5.

* * * * *

> SECTION 12. The Municipality will place and maintain advance warning signs and pavement markings in accordance with the "Indiana Manual on Uniform Traffic Control Devices for Streets and Highways" adopted by the State of Indiana and in conformance with the "National Manual on Uniform Traffic Control Devices."

(R. 205, 207, 2226, 2228).

CSX began replacing the railroad crossings in 1990. On November 26, 1990, CSX

began working on the crossing at the intersection of Lafayette Avenue ("Lafayette") and Hawthorne Avenue. ("Hawthorne"). Lafayette runs north and south through Terre Haute, and Hawthorne runs east and west. The railroad crossing runs east and west, and is located just south of the Lafayette and Hawthorne intersection. That morning, Terre Haute Street Commissioner William Trout supervised the placement of signs and barricades at the crossing. According to Trout, city workers placed a four foot by four foot orange, reflectorized "Road Closed" sign north of the railroad crossing. The sign faced north on Lafayette. Workers also placed two three foot A-frame signs with reflectorized tape and flashing yellow lights, and two eight to twelve foot long A-frame bar barricades across the road just north of the railroad tracks. It is undisputed that CSX did not place any warning signs or barricades in the area.

During the course of the day, CSX workers removed the crossing which was in place, including the timbers, rails and ties, and dug a hole for the installation of the new crossing. The hole covered an area that was nine feet wide and two feet deep. After CSX left the job site, Commissioner Trout performed a final inspection of the area and left.

At approximately 10:30 p.m., Terre Haute sign crew member Nate Brown received a call from the police department. In response, Brown reported to the Lafayette and Hawthorne intersection, changed the flashing lights on the barricades north of the crossing, and picked up a fallen barricade. At approximately 2:10 a.m. the following morning, Terre Haute Police Department Officer Norman Loudermilk was dispatched to the scene of an accident at Lafayette and Hawthorne. Someone had driven a vehicle into the hole on the north side of the railroad tracks and abandoned it. The vehicle was towed, and Officer Loudermilk, who did not recall seeing any barricades on the north side of the railroad crossing, left the scene. At approximately 2:40 a.m., sign crew member Brown received a call about an accident at Lafayette and 25th Street, south of the railroad crossing. Brown placed a flasher at that location and drove by the north side of

the crossing. According to Brown, the barricades were still in place.

At approximately 6:55 a.m., Randy Kirby was driving his 1984 Ford LTD south on Lafayette. Kirby's then wife, Teddie, and their four children, Michael and Jessica Marshall, and Brent and Amanda Kirby, were in the car. As he approached Hawthorne Avenue, Randy saw a board lying in the road. Randy attempted to drive around the board and drove into the hole on the north side of the railroad crossing. Several minutes later, another vehicle drove into the hole. Neither Randy nor Teddie saw any signs, lights or barricades. Officer Loudermilk was called back to the scene, and he did not see any barricades on the north side of the crossing. He did find a sign lying on the street.

Randy, Teddie and their children were all injured in the accident. They subsequently filed a negligence action against the City and CSX. CSX filed a summary judgment motion which the trial court granted as to punitive damages and denied in all other regards. The Kirbys subsequently reached a settlement with the City for $30,000, and proceeded to trial on their claim against CSX, which amended its answer to identify the City as a non-party. At the close of all the evidence, CSX filed a motion for judgment on the evidence which the trial court denied. The jury found in favor of the Kirbys, and attributed 50% of the fault to CSX and 50% to the non-party City. Thereafter, the jury multiplied the percentage of CSX's fault by the total damages awarded, and awarded $25,000 to Randy, $100,000 to Teddie, $37,500 to Michael, $2,500 to Jessica, $2,500 to Brent, and $2,500 to Amanda.

## DECISION

### I. Summary Judgment

CSX first argues that the trial court erred in denying its summary judgment motion. Specifically, CSX contends that it "had no duty to safeguard highway traffic." CSX's Brief, p. 27. We disagree.

When reviewing a decision on a summary judgment motion, we apply the same standard as the trial court. *Goldsberry v. Grubbs,* 672 N.E.2d 475, 477 (Ind.Ct.App. 1996), *trans. denied.* Summary judgment

shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; Ind.Trial Rule 56(C). All facts and reasonable inferences must be construed against the non-moving party. *Goldsberry,* 672 N.E.2d at 477.

▉ The elements of negligence are: 1) a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff, 2) a failure of the defendant to conform its conduct to that standard, and 3) an injury proximately caused by the breach of duty. *Sheley v. Cross,* 680 N.E.2d 10, 12 (Ind.Ct.App. 1997), *trans. denied.* Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.* Whether a defendant owes a duty to a plaintiff is a question of law. *Id.*

▉ Railroad companies owe to the traveling public the duty of exercising reasonable care to avoid injury to persons at places where the tracks and the highway cross. *Pennsylvania Railroad Company v. Mink,* 138 Ind.App. 311, 212 N.E.2d 784, 788 (1966). *See also,* 24 I.L.E. *Railroads* § 131 (1959) and cases cited therein. Further, railroad companies have a duty to construct and maintain crossings so that they will be reasonably safe for travel. *Tyler v. Chicago and Eastern Illinois Railway,* 241 Ind. 463, 173 N.E.2d 314, 320 (1961). *See also,* 24 I.L.E. *Railroads* § 133 (1959) and cases cited therein. Therefore, CSX owed the Kirbys a duty of reasonable care.

▉ Nevertheless, CSX contends that the "agreement between CSX and the City placed the responsibility for protecting and safeguarding highway traffic on the City. As a result of the agreement, CSX had no duty to warn the [Kirbys]." CSX's Brief, p. 13. However, our supreme court has said that a "party may not contract against his own negligence." *Freigy v. Gargaro Co., Inc.,* 223 Ind. 342, 60 N.E.2d 288, 292 (1945).[1] *See also City of Anderson v. Fleming,* 160 Ind.

597, 67 N.E. 443 (1903)(holding that the delegation of the performance of a common law duty does not relieve the promisee of potential tort liability to third persons); *Whitten v. Kentucky Fried Chicken, Corp.,* 570 N.E.2d 1353, 1359 (Ind.Ct.App.1991), *reh'g denied, trans. denied* (Judge Sharpnack concurring with separate opinion.) ("The parties cannot contract away whatever liabilities they may have to third parties, no matter what they . . . agree to between themselves."). Based on the foregoing, CSX could not contract away the duty of reasonable care which it owed the Kirbys.

▉ CSX further contends that "assuming, arguendo, that CSX had a duty to the [Kirbys], CSX did not breach [this] duty . . . ." CSX's brief, p. 37. However, questions of breach are traditionally within the competence of a jury. *South Eastern Indiana Natural Gas Co., Inc. v. Ingram,* 617 N.E.2d 943, 950 (Ind.Ct.App.1993). The trial court did not err in denying CSX's summary judgment motion.

## II. *Judgment on the Evidence*

At the close of all the evidence, CSX filed a motion for judgment on the evidence, which the trial court denied. CSX now contends that the trial court erred in denying its motion. We disagree.

▉ When reviewing the trial court's denial of a motion for judgment on the evidence, we will consider only the evidence most favorable to the nonmovant along with all reasonable inferences to be drawn therefrom. *TRW, Inc. v. Fox Development Corp.,* 604 N.E.2d 626, 629 (Ind.Ct.App.1992), *reh'g denied, trans. denied.* We must determine whether there was evidence of probative value supporting each element which would justify submission of the claim to the jury. *Id.* If there is any probative evidence or reasonable inference to be drawn from the evidence or if reasonable people would differ as to the result, judgment on the evidence is properly denied. *Id.* A motion for judgment on the

---

1. We are aware that in *Loper v. Standard Oil Co.,* 138 Ind.App. 84, 211 N.E.2d 797 (1965), this court stated that the *"Freigy* case is not valid authority for the principle that a party may not

contract against his own negligence." *Id.,* 211 N.E.2d at 800. However, we follow the precedent of our supreme court until that court changes the law.

evidence should be granted only in those cases where the evidence is not conflicting and susceptible to one inference, supporting judgment for the movant. *Id.* Thus, our role on review is no different from that of the trial court. *Id.*

CSX contends as follows:

CSX based its motion on the Plaintiffs' failure to establish a duty on the part of CSX to warn the plaintiffs of the excavation. The agreement between CSX and the City placed the responsibility for protecting and safeguarding highway traffic on the City. As a result of the of the agreement, CSX had no duty to warn the Plaintiffs.

CSX's Brief, p. 13. However, we have already held that CSX owed the Kirbys a duty of reasonable care which it could not contract away. Therefore, the trial court did not err in denying CSX's motion for judgment on the evidence.

### III. *Jury Verdict*

CSX further argues that the jury's verdict was contrary to both the law and the evidence. Specifically, CSX contends as follows:

The jury's verdict was contrary to the law for two reasons. First, CSX had no duty to the [Kirbys]. Second, assuming arguendo, that CSX had a duty to the [Kirbys], CSX did not breach any duty owed to the [Kirbys]. For both of these reasons, the jury's verdict was contrary to the uncontradicted evidence.

CSX's Brief, p. 42. Again, we disagree.

■■■ In addressing a claim of insufficiency of the evidence, our standard of review is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. *Schultheis v. Franke,* 658 N.E.2d 932, 938 (Ind.Ct.App.1995), *trans. denied.* Rather, we consider only the evidence most favorable to the verdict, and if substantial evidence of probative value supports the verdict, it will not be set aside. *Id.* Likewise, in addressing a claim that a judgment is contrary to law, we will neither reweigh evidence nor judge witness credibility and will reverse the judgment only if the uncontradicted evidence leads to a conclusion opposite that reached by the trial court. *Id.*

■■■ Here, we have held that CSX owed the Kirbys a duty of reasonable care. Further, our review of the record reveals substantial evidence of probative value to support the jury's verdict. Specifically, on November 26, 1990, CSX workers removed the railroad crossing which was in place just south of the Lafayette/Hawthorne intersection. The workers removed the timbers, rails and ties, and dug a hole for the installation of the new crossing. The hole covered an area that was nine feet wide and two feet deep. CSX placed no warning signs or barricades in the area. Based on the foregoing, the jury could have found that CSX breached its duty of reasonable care. Therefore, the jury's verdict is contrary to neither the law nor the evidence.

### IV. *Jury Instruction*

At trial, CSX tendered the following:

Instruction Number 8

You are instructed that Indiana recognizes the gratuitous assumption by one who, through affirmative conduct or agreement assumes or undertakes a duty to act.

If you find that the City of Terre Haute assumed a duty to act in this case, and if you find they breached such duty and that such breach of duty constitutes fault in this case, then you may assign that percentage of fault to the non-party City of Terre Haute as you find from a consideration of all of the evidence.

(R. 1169). The trial court refused to give it, and CSX contends that the trial court erred in so refusing. We disagree.

■■■ The giving of jury instructions is a matter within the trial court's sound discretion, and we review the trial court's refusal to give a tendered instruction for an abuse of that discretion. *Kelley v. Watson,* 677 N.E.2d 1053, 1056 (Ind.Ct.App.1997). We will reverse a trial court for failure to give a tendered instruction if: 1) the instruction is a correct statement of the law; 2) it is supported by the evidence; 3) it does not repeat material adequately covered by other instructions; and 4) the substantial rights of

the tendering party would be prejudiced by the failure to give it. *Reeves v. Boyd and Sons, Inc.*, 654 N.E.2d 864, 873 (Ind.Ct.App. 1995), *trans. denied* (quoting *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186 (Ind.Ct. App.1993), *reh'g denied, trans. denied*).

 Our review of the final instructions given at trial reveals that the jury was instructed that 1) the City was a nonparty which had to be treated as any other defendant in the case for the purpose of assessing fault; 2) the types of fault at issue were negligence on the part of Randy, CSX and the City; and 3) in order to determine the proportionate percentage of fault attributable to Randy, CSX and the City, the jurors were required to compare the fault of each of them by considering all the surrounding circumstances. Further, the jury was instructed in part as follows regarding the apportionment of fault:

> First, you must determine the percentage of fault, if any, of the plaintiff and of the defendant and of the identified nonparty in the proximate causation of the plaintiff's injuries and damages. These percentages must to[t]al 100%.
>
> Next, if the plaintiff's fault is greater than 50% then you must return your verdict for the defendant and against the plaintiff in this case; and no further deliberation is required.
>
> However, it you find that the plaintiff's fault is 50% or less, then you must determine the total amount of damages the plaintiff is entitled to recover, if any, without regard to fault.
>
> Then, you must multiply the plaintiff's total damages by the defendant's percentage of fault and return your verdict for the plaintiff and against the defendant in the amount of the product of that multiplication.
>
> The verdict forms provided to you by the court will help guide you through this process.

(R. 1197–98).

The jury was properly instructed to make an assignment of that percentage of fault which it attributed to the City and to CSX. Therefore, CSX's tendered Instruction Num-

ber Eight repeated material adequately covered by other instructions. Further, because CSX's tendered instruction was covered by other instructions, the trial court's refusal to give it did not prejudice CSX's substantial rights. Based on the foregoing, the trial court did not err in refusing to give CSX's tendered Instruction Number Eight.

Affirmed.

ROBERTSON, J., concurs.

CHEZEM, J., concurs in result.