Monty YOUNG, Personal Representative of the Estate of Michael K. Young, Deceased, Appellant–Plaintiff,

v.

TRI–ETCH, INC., d/b/a Sonitrol Security Systems of Muncie, Inc., Appellee–Defendant.

No. 18A02–0109–CV–631.

Court of Appeals of Indiana.

May 17, 2002.

---

James R. Fisher, Debra H. Miller, Ice Miller, Indianapolis, Indiana, Attorneys for Appellant.

Andrew P. Wirick, Debra G. Richards, Hume, Smith, Geddes, Green & Simmons, LLP, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Monty Young, personal representative of the estate of Michael Young ("the estate"), appeals from the trial court's grant of summary judgment in favor of Tri–Etch (d/b/a Sonitrol Security Systems of Muncie). We affirm.[1]

### Issue

The estate presents two issues for review; those issues are consolidated and restated here as whether the trial court erred in determining that a liability limitation in the service contract between Tri–Etch and Muncie Liquors applied to the estate's claim against Tri–Etch.

### Facts and Procedural History

In 1992, Muncie Liquors purchased a security system and contracted for alarm monitoring services for their store on Tillotson Avenue in Muncie, Indiana, from Tri–Etch. Michael Young ("Young"), an employee at the Tillotson store, worked the closing shift on August 12, 1997. At some time before the closing time of 12:00 a.m., a man robbed Young at gunpoint, kidnapped him, drove him to a nearby park, beat him severely, and left him tied to a tree in the park. Young was found alive at approximately 6:00 a.m., but he died later that day as a result of his injuries.[2]

Tri–Etch provided a service to Muncie Liquors in addition to monitoring the

1. We heard oral argument on this case on February 19, 2002, at Wabash College in Crawfordsville, Indiana. We thank the attorneys for their capable advocacy and the students and faculty for their gracious reception.

2. The record includes some evidence from the estate indicating that had Young been found

alarm. If the store's alarm were not set within a certain amount of time after the usual closing time for the store, Tri–Etch would call the store, then notify the store's general manager, then call the police. This notification service is not described in the service contract between Muncie Liquors and Tri–Etch, and the parties do not agree on exactly what the warning service consisted of or at what times the service would be provided. However, Tri–Etch customarily notified the Tillotson store by 12:30 a.m. in the event the alarm was not set, as the store's usual closing time was 12:00 a.m. On August 13, 1997, Tri–Etch did not call the store or the general manager until approximately 3:00 a.m. to notify Muncie Liquors that the alarm was not set at the normal time after closing.

The estate filed a wrongful death action, claiming it was entitled to recovery because Tri–Etch failed to notify Muncie Liquors of the alarm not being set by 12:30 a.m. on August 13, 1997. Tri–Etch filed a motion for summary judgment; in that motion, Tri–Etch requested that the court enter judgment in its favor for the reason that under the terms of the service contract between Muncie Liquors and Tri–Etch, any action against Tri–Etch must be brought within one year of the incident giving rise to the cause of action. The trial court found that more than one year had passed between Young's murder and the filing of the complaint, and it ruled in favor of Tri–Etch based upon the service contract's liability limitation.[3] The estate then appealed the trial court's ruling.

### Discussion and Decision

### A. Standard of Review

When we review a grant or denial of summary judgment, our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Indiana Univ. Medical Center, Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind.2000). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Id.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.*

■ In this case, the trial court entered specific findings of fact and conclusions of law. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *McBride ex rel. Estate of McBride v. Cole Associates, Inc.*, 753 N.E.2d 730, 735 (Ind. Ct.App.2001). Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. *Id.*

■ Finally, our proper role includes the careful scrutiny of the trial court's determination to assure that the non-prevailing party is not improperly prevented from having her day in court. *R.R. Donnelley & Sons Co. v. North Texas Steel Co., Inc.*, 752 N.E.2d 112, 121 (Ind.Ct.App. 2001), *trans. denied.*

### A. Trial Court's Judgment and Parties' Arguments on Appeal

While this case is not factually complicated, the trial court's ruling and the par-

---

earlier, he might have survived; however, Tri–Etch's position on this issue is not apparent from the record before us.

3. The estate filed its complaint on August 6, 1999.

ties' legal arguments require considerable explanation. Therefore, this section shall be devoted to summarizing the parties' arguments and the trial court's ruling in order to lay a foundation for more thorough discussion later.

At the trial court level, the estate argued it was entitled to recovery from Tri–Etch under two different theories: one sounding in contract and the other in tort. In its summary judgment order, the trial court found no issues of material fact existed. Regarding the contract claim, it ruled that as a matter of law, the claim could not stand because the service contract "specifically provided a one-year limitation on actions, and [the estate] did not file [its] action within that one-year time period." Plaintiff–Appellant's Brief at 28. The trial court then responded to the estate's tort claim as follows:

> Tri–Etch responds by arguing that all actions it took were performed under the agreement, and so "[the estate] cannot escape the application of the contract to this theory of liability, regardless of whether [the estate] is proceeding under a contractual or tort theory of liability." (Reply Brief, p. 17.) Tri–Etch cites *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55 (Ind.Ct. App.1984) [*trans. denied; abrogated on other grounds* in *Mitchell v. Mitchell*, 695 N.E.2d 920, 922 (Ind.1998)], to support its argument. The Court agrees with Tri–Etch that *Orkin* controls in this case, and [the estate] cannot avoid the contract's one year limitation clause.

**4.** The contract provides that "[a]ll claims, actions or proceedings, legal or equitable, against DEALER must be commenced in court within one (1) year after the cause of action has occurred or the act, omission or event occurred from which the claim, action or proceeding arises, whichever is earli-

Plaintiff–Appellant's Brief at 29.[4] A discussion of the holding in *Orkin* follows in the next section below.

In its argument on appeal, the estate attempts[5] to revive the tort claim it argued before the trial court; the estate notes that its "claim against Defendant is based upon Defendant's breach of a common law tort duty...." Plaintiff–Appellant's Reply Brief at 1. The estate makes an argument in two parts on appeal regarding how the trial court erred in its entry of judgment. First, the estate argues that the contract time limitation should not apply to this wrongful death action because Young was not a party to the contract between Muncie Liquors and Tri–Etch; in other words, Young did not agree to the one-year limitation as did Muncie Liquors, and so the limitation should not apply to his claim. This argument appears to be an attempt to distinguish this case from *Orkin*, which the trial court found controlling. Next, the estate argues the 12:30 a.m. warning call practice constituted a separate oral agreement between Tri–Etch and Muncie Liquors, and that separate oral agreement contained no one-year liability limitation.

In response, Tri–Etch argues that all its duties to Young, if any, should be determined by reference to the written contract between Tri–Etch and Muncie Liquors; in other words, the trial court was correct in finding the holding in *Orkin* to be controlling. To bolster its argument, Tri–Etch notes cases from other jurisdictions in which contract terms are found to apply to third-party beneficiaries under those contracts.[5] Tri–Etch also disputes the es-

er...." Appendix to Plaintiff–Appellant's Brief at 55. This clause is referred to as a "liability limitation" throughout this opinion.

**5.** Tri–Etch also cites Indiana caselaw allowing a contractual shortening of the time within which a plaintiff may bring suit. *See Me-*

tate's claim that a separate oral agreement existed regarding the notification call service. Finally, Tri–Etch argues that even if there existed a separate oral agreement, Young was not a third-party beneficiary to that agreement, and therefore Tri–Etch had no duty to Young upon which liability could be based.

### B. The Holding in *Orkin*

The trial court found the holding in *Orkin* to be controlling regarding the one-year limitations period, and so it did not reach the elements of the underlying contract and tort claims the estate made. In *Orkin*, plaintiff Walters contracted with Orkin exterminating company for pest control services, including termite control, in her home. Orkin treated Walters' home initially in 1976, then again in 1979 and 1980 after Walters discovered additional termite damage. The 1979 and 1980 treatments were not charged to Walters because at the time of the initial treatment she purchased a "Continuous Protection Guarantee" and paid an annual fee to keep that guarantee active. Despite these treatments Walters still had pest problems, and she sued Orkin in 1980 for negligent breach of contract. The trial court awarded her $54,000.00 for damage to property and for discomfort, inconvenience, mental stress, and aggravation. The trial court concluded that "[w]here the damage results from a breach of duty and would not have occurred but for Defendant's negligent performance, Defendant's negligence constitutes malfeasance and Plaintiff may sue in tort.... Where Defendant performs in such a defective way as to amount to tortious malfeasance,

*ridian Mut. Ins. Co. v. Caveletto*, 553 N.E.2d 1269, 1270 (Ind.Ct.App.1990) ("A contractual limitation of actions provision which shortens the time within which plaintiffs must bring suit is valid and enforceable in Indiana if the parties mutually consented and agreed to the provision.").

Plaintiff's damages are not limited to contract terms." *Orkin*, 466 N.E.2d at 57.

The *Orkin* court reversed the trial court's judgment, noting that:

> Indiana law recognizes that Walters had an option of suing in tort or in contract for the negligent performance of a contractual duty ... Walters' suit based in tort does not change the fact that Orkin's duty to Walters is based on the contract. Moreover, bringing a suit in tort does not allow Walters to avoid the limitation of liability clause in the contract.

*Orkin*, 466 N.E.2d at 58. The *Orkin* court cited a rationale for this rule from *Better Food Markets, Inc. v. American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10, 15–16 (1953): "Although an action in tort may sometimes be brought for the negligent breach of a contractual duty ... still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty." *Orkin*, 466 N.E.2d at 58.

### D. The Arguments Under *CSX*[6]

The estate argues that this case is distinguishable from *Orkin* because plaintiff Walters in *Orkin* was a party to the contract in which Orkin limited its liability, whereas Young was not a party to the contract between Tri–Etch and Muncie Liquors. The estate urges us to hold that a third party's tort claim cannot be denied due to a one-year liability limitation in a contract without that third party's knowledge and consent.

**6.** The estate makes an argument under *CSX Transportation, Inc. v. Kirby*, 687 N.E.2d 611 (Ind.Ct.App.1997), *trans. denied.*

The estate asserts that "no private contract can be effective in extinguishing or limiting [a party's] legal liabilities to third persons." Plaintiff–Appellant's Brief at 18. In support of this proposition the estate cites *CSX Transportation, Inc. v. Kirby,* 687 N.E.2d 611 (Ind.Ct.App.1997), *trans. denied.* CSX, a railroad company, contracted with the city of Terre Haute to repair railroad crossings within the city. The contract provided that the city would be responsible for erecting signs warning oncoming automobile drivers of the construction. Members of the Kirby family were injured when their vehicle fell into a hole created by the construction that was not clearly marked by a warning sign, and they sued the city and CSX. CSX filed for summary judgment, claiming the contract relieved it of liability for injuries due to the construction because the city bore responsibility for warning signs under the contract. The trial court denied the summary judgment motion, and this court affirmed that denial, noting that "[r]ailroad companies owe to the traveling public the duty of exercising reasonable care to avoid injury to persons at places where the tracks and the highway cross." *CSX,* 687 N.E.2d at 615. This court further noted that "a party may not contract against his own negligence … CSX could not contract away the duty of reasonable care which it owed the Kirbys." *Id.*

Tri–Etch favors the use of the *Orkin* rule relied upon by the trial court, and it attempts to distinguish away *CSX* by arguing that unlike the previously existing duty owed by the railroad company to the general public, Tri–Etch had no comparable common law duties to Young. Tri–Etch asserts that its only obligation was to perform under the written contract between it and Muncie Liquors.

**E. Contract Liability Limits Apply**

■ Neither *Orkin* nor *CSX* directly addresses the issue in this case, namely whether contract liability limits apply to third parties suing in tort. However, we find the holding in *Orkin* instructive, and we rely on its theory for our holding. We acknowledge that the estate is situated differently than the plaintiff in *Orkin* in that Young was not a party to the contract and so the estate could not bring an action directly under the service contract. Still, we hold, just as in *Orkin,* that whether the estate brings its claim in contract or tort, it cannot escape the liability limitations in the service contract. It is immaterial that Young himself did not agree to the liability limitations because Young would have no relationship with Tri–Etch at all were it not for the service contract.

As a non-party, Young was never in a position to accept or reject liability limitations in the service contract. Any rights Young had were derivative of the business relationship between Muncie Liquors and Tri–Etch; therefore, any benefit to Young as a result of this business relationship could not have come to exist without the service contract. Were we to find that the liability limits do not apply to the estate's claim, in effect we would be granting Young, a non-party, greater rights under the contract than the parties themselves had under that contract.[7]

As for the estate's attempt to escape the liability limitations by relying heavily on the idea of a separate duty arising from the alleged oral agreement Tri–Etch made to provide notification calls, we find it unnecessary to determine whether such a separate oral contract existed. We agree

---

7. At different times during this proceeding both parties raised the issue of whether Young was, in fact, a third party beneficiary to the contract. The resolution of this question does not affect our holding one way or the other; thus, we leave it for another day.

with Tri–Etch that even if a separate oral contract existed, it would still have its genesis in the relationship established by the written contract. Thus, such an oral contract would not exist independently of the written contract, and it would therefore be interpreted with reference to and bound by the terms of the service contract.

■ We also find it unnecessary to resolve the question of whether Tri–Etch actually owed a duty to Young.[8] The estate argues extensively under section 324A of the Restatement (Second) of Torts that Tri–Etch owed a common law duty to Young independent of the contract.[9] The source of this duty, according to the estate, is the "separate oral agreement" Tri–Etch made with Muncie Liquors when it voluntarily undertook the notification call service. Should Tri–Etch owe any duty at all to Young, that duty could not exist without Muncie Liquors' contractual purchase of security services from Tri–Etch. And as we noted previously, without the service contract, Young and Tri–Etch would have no relationship at all. Therefore, the one-year limitation in the contract applies to any such duty that might exist, and the trial court did not err in ruling in favor of Tri–Etch.

### Conclusion

The trial court did not err in granting summary judgment for Tri–Etch after determining that the one-year liability limitation in the contract between Tri–Etch and Muncie Liquors applied to the estate's claim.

Affirmed.

KIRSCH, J., and RILEY, J., concur.

**8.** "The existence of a duty is a question of law for the court ... the court balances three factors in determining whether a duty exists: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns." *Barnes v. Antich*, 700 N.E.2d 262, 266 (Ind.Ct.App.1998), *trans. denied.*

**9.** That section provides in part as follows:
One who undertakes, gratuitously or for consideration, to render services to another, which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of the reliance of the other or the third person from the undertaking.
Indiana has adopted this principle; *see Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1262 (Ind.Ct.App.1989), *trans. denied.*