Gerald SUMMERS, Appellant–Plaintiff,

v.

AUTO–OWNERS INSURANCE CO., Appellee–Defendant.

No. 48A04–9903–CV–109.

Court of Appeals of Indiana.

Nov. 15, 1999.

Marianne Woolbert, Anderson, Indiana, Attorney for Appellant.

Alan A. Bouwkamp, Renae L. Hermann, Jennings Taylor Wheeler & Bouwkamp, P.C., Carmel, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Judge

In this appeal, Gerald Summers asserts that the trial court should not have granted summary judgment in favor of Auto–Owners Insurance Company ("Insurance Company").

On July 3, 1996, Summers was the victim of a theft of personal property from his garage in Anderson. On July 15, 1996, Insurance Company was notified of the theft and sent a theft questionnaire and inventory forms to Summers. After a month passed with no response from Summers, Insurance Company sent a follow-up letter as well as inventory forms and two proof of loss forms. On September 4, 1996, Summers sent his "sworn statement in proof of loss" form (Record at 30) and completed inventory forms to Insurance Company.

On November 2, 1996, Insurance Company sent Summers a letter requesting an examination under oath,[1] seeking various documents, and indicating, "we cannot reply to the proof of loss as submitted, and it is rejected because it does not include sufficient documentation and does not comply with policy requirements." Supp. Record at 66–69. On November 15, 1996, attorney Marianne Woolbert sent to Insurance Company's counsel a letter in which she: 1) explained that she was representing Summers in the matter; 2) responded

---

1. The policy required such an exam. Supp. Record at 8.

to the document request; and 3) agreed to the examination of her client.

In an effort to arrange the examination, Insurance Company sent three separate letters to Woolbert. They were dated December 23, 1996, January 30, 1997, and February 10, 1997. On February 12, 1997, a representative from Woolbert's office contacted Insurance Company's attorney to schedule the exam.

The examination of Summers occurred on March 25, 1997. During the examination, Woolbert contested the requirement that Summers execute an authorization for the release of his tax records. On April 11, 1997, the transcript of the examination was mailed to Woolbert's office for Summers' signature, as per the policy's signature requirement. Supp. Record at 8. In an April 29, 1997 letter to Summers' counsel, Insurance Company set out the authority for its position that it was entitled to obtain tax records and that Summers had a duty to provide it "with authorizations for the records if he [did] not have them in his possession." Supp. Record at 123. As of the date of its appellee's brief, Insurance Company had not yet received Summers' signed transcript of the examination.

On September 3, 1997, Woolbert mailed correspondence to Insurance Company "pertaining to discrepancies in [Summers'] examination under oath transcript." Record at 68. Two weeks later, Insurance Company sent a letter to Woolbert stating, *inter alia* :

> Mr. Summers' opportunity to comply with the terms and conditions of the policy concluded on the one year anniversary of the loss, July 3, 1997. As the time within which Mr. Summers could cooperate and comply with the terms and conditions of the policy expired as of the one year anniversary of the loss, he is barred from further pursuit of this matter.

Supp. Record at 124. On October 22, 1997, Summers filed a complaint asserting that Insurance Company was liable to him for the theft. Thereafter, Insurance Company filed its answer and affirmative defenses, and later, a motion for summary judgment and accompanying documents. Summers filed a response to the motion for summary judgment. Insurance Company replied. Following an October 1998 hearing on the matter, the trial court granted Insurance Company's motion for summary judgment.

■■■ Upon review of the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *North Snow Bay, Inc. v. Hamilton*, 657 N.E.2d 420, 422 (Ind.Ct. App.1995). We may not search the entire record to support the judgment, but may only consider that evidence which has been specifically designated to the trial court. *Id.* The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Id.*

■■■ "It is well established in Indiana that, while not favored, ... contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." *Schafer v. Buckeye Union Ins. Co.*, 178 Ind.App. 70, 381 N.E.2d 519, 522 (1978). The "purpose of such provisions concerns not a specific date following the loss but unreasonable delay in proceeding to enforce or pursue the claim." *Id.* at 523 n. 5. That is, these limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates. *Id.* at 523.

■■■ Such limitations provisions may be waived either expressly or impliedly. *Id.* at 522. " 'A waiver or estoppel may

result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy.'" *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 363 N.E.2d 985, 991 (1977) (quoting 46 C.J.S. Insurance § 1264 (1946)). We have described our analysis of implied waivers as follows:

> *[C]ontractual limitation periods may be waived by an insurer if its conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required.* The focus of our inquiry then is upon the relationship between the parties, seeking to determine "whether anything has been done ... which would cause the insured to reasonably believe the limitation period will not be insisted upon." If such a belief has been fostered by the insurer, it may no longer raise the limitation period as a defense. "To hold otherwise," ... "would be to allow the insurer to lull an insured into not pressing his rights and then deny liability on the basis of the limitation period."

*Wingenroth v. American States Ins. Co.,* 455 N.E.2d 968, 970 (Ind.Ct.App.1983) (citations omitted) (emphasis added); *see also Huff,* 363 N.E.2d at 991.

▮ The policy at issue provides: "We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs." Supp. Record at 17. It further states:

> If a covered loss occurs, the insured person must:
>
> * * *
>
> a. give us immediate written notice.
>
> * * *
>
> c. make a list of all damaged and destroyed property; show in detail quantities, costs, actual cash value and amount of loss claimed;

> d. send to us, within 60 days after loss, a proof of loss signed and sworn to by the insured person, include:
>
> (1) the time and cause of loss;
>
> (2) the interest of insured persons and all others in the property;
>
> (3) actual cash value and amount of loss to the property;
>
> (4) all encumbrances on the property;
>
> (5) other policies covering the loss;
>
> (6) changes in the title, use, occupancy or possession of the property; and
>
> (7) if required, any plans and specifications of any damaged building or fixtures;
>
> * * *
>
> f. submit to examinations under oath by any person we name and sign the transcript of the examinations;
>
> g. produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as we may reasonably require[.]

Supp. Record at 8.

Rather than giving immediate notice, Summers gave notice on July 15, 1996 for the July 3, 1996 loss. Insurance Company mailed forms to Summers the day it learned of the loss. However, Summers did not submit his proof of loss until more than sixty days after the loss had passed and until after Insurance Company had prompted him by sending a follow-up letter and additional forms. In a November 2, 1996 letter, Insurance Company rejected Summers' proof of loss and attempted to schedule an examination of Summers. Within that letter, Insurance Company stated:

> If there is some legitimate reason why it is not possible for you to make immediate arrangements for this examination under oath, please advise [Insurance Company] immediately in writing. You should be advised that Indiana law provides that a refusal to provide an examination under oath, when requested by an insurance company pursuant to a pol-

icy of insurance, may be viewed by the insurance company as a basis for denial of the claim. Any unexplained failure to appear for your examination under oath may be treated by [Insurance Company] as an intentional breach of the insurance contract and a forfeiture of whatever other rights you might otherwise have.

Supp. Record at 67. Not until February 12, 1997, and not until Insurance Company sent three more letters urging that an exam date be set, did a representative from Woolbert's office contact Insurance Company to schedule the examination.

During the examination, which finally occurred March 25, 1997, Woolbert challenged the execution of an authorization for the release of Summers' tax records. Seventeen days later, Insurance Company sent the transcript to Woolbert for Summers' signature. At the end of April, Insurance Company sent a letter citing its authority for the tax information. Insurance Company did not hear from Summers until early September, over five months after the examination occurred and two months after the expiration of the one-year policy time limit, at which time Woolbert sent a letter challenging parts of the examination transcript. No signed examination transcript was forwarded to Insurance Company.

The following observations may be gleaned from the above undisputed facts. First, Insurance Company did not expressly waive its policy's requirements. Second, Summers did not comply with various requirements of the policy. Third, Insurance Company did not impliedly waive its policy requirements; rather, it tried to enforce them. This third point requires further explanation.

█ It is true that other than giving Summers copies of the policy, Insurance Company did not further expressly inform Summers of the one-year deadline. We have stated that generally an insurer need not so inform an insured. *Statesman Ins. Co. v. Reibly,* 175 Ind.App. 317, 371 N.E.2d 414, 416 n. 4 (1978) (noting that an insurer "had no duty to inform [insured] of his responsibilities under the contract or that it intended to assert the one-year limitation of action provision as a defense.") (citing Appleman, 20A Insurance Law and Practice § 11639 (1963)). An exception to the general rule exists. Where "an insurance carrier does not deny coverage or liability, *and* proceeds to negotiate with the insured toward settlement of the claim, the law will imply a waiver of the contractual limitation for the bringing of suit, unless and until the insurer puts the insured on notice that litigation is necessary if he desires to pursue the claim further." *Schafer,* 381 N.E.2d at 523 (emphasis added); *see also Interstate Auction, Inc. v. Central Nat'l Ins., Group, Inc.,* 448 N.E.2d 1094, 1103 (Ind.Ct.App.1983) (noting that in certain situations where no denial of liability was made by the insurer, Indiana case law requires an insurer to notify the insured of its intent to rely on the contractual limitation period).

Insurance Company did not deny coverage of Summers' claim within the one-year period. However, Insurance Company did not reach the settlement negotiation stage. Indeed, no offer of money ever occurred. Instead, Insurance Company simply attempted to investigate the claim pursuant to its policy. Thus, the exception does not apply, and Insurance Company was under no obligation to expressly put Summers on notice that litigation within one year would be necessary if he wished to pursue his claim further.

Moreover, despite its repeated attempts to expedite the process, Insurance Company's investigation was hampered by Summers' and Woolbert's failure to follow the policy's requirements. Even the numerous reminders that Insurance Company was not waiving its policy rights[2] failed to

---

**2.** The November 2, 1996 letter from Insurance Company, through its attorney, to Summers included the following language:

motivate Summers to proceed in a timely fashion. Under these circumstances, no waiver of the contractual limitation for the bringing of suit can be implied. That is, Summers has not alleged and we cannot find any indication that Insurance Company engaged in conduct sufficient to create a reasonable belief on the part of Summers that strict compliance with the policy provisions would not be required. *Cf. Wingenroth*, 455 N.E.2d at 970 (reversing summary judgment where insurer's letter, while not expressly declaring that it was waiving the one year limitation period, could give rise to the reasonable inference that the insurer would not require strict compliance with the provision); *see also Wallace v. Indiana Ins. Co.*, 428 N.E.2d 1361 (Ind.Ct.App.1981) (affirming partial summary judgment against insured where insurer informed that if she failed to submit a verified and itemized list of damaged contents by a certain date, her claim would be denied without payment).

In reaching our conclusion, we distinguish *Huff*. In that case, our supreme court explained that once notice was given and no objection was raised to the mode of documentation and liability was not denied until long after the twelve-month period, then the insurer has waived his right to insist on either provision. *Huff*, 363 N.E.2d at 992. Here, Insurance Company quickly registered its objection to Summers' proof of loss and denied liability as soon as Summers contacted it after the one year period had expired. Again, Insurance Company did all it could to bring the matter to a timely resolution and continued to reiterate that it was not waiving

its rights under the policy. Thus, we cannot say Insurance Company lulled Summers into not pressing his rights and then denied liability on the basis of the limitation period. *See Statesman*, 371 N.E.2d at 416 (reversing jury's verdict for insured where insured did not file suit until at least eighteen months after last contact with insurer and where there was no evidence that insurer's conduct caused insured to delay filing suit).

Accordingly, Summers has not met his burden of persuading us that the trial court's decision, granting summary judgment in Insurance Company's favor, was erroneous.

Affirmed.

SULLIVAN, J. and BAILEY, J. concur.

---

It must be understood that actions taken by my client, its agents, representatives and attorneys, should not be construed as a waiver of the terms, conditions, and requirements of the policy under which you have made claim. My client reserves all of its rights under this policy, and no waiver or estoppel of any kind is intended nor should be inferred. * * *

You should understand that the above requests and other actions taken by [Insurance Company] in investigating your claim should not be construed as a waiver of the terms, conditions, or requirements of the policy under which you have made claim. [Insurance Company] specifically reserves its rights under its policy, including, but not limited to, its rights to deny coverage for any refusal to comply with the above requests.

Supp. Record at 66–67, 69. Similar language appeared in various other letters from Insurance Company to Summers. Supp. Record at 83, 85, 86, 124–25.