Donnie Ray DUNAWAY, Jr. and Lisa Carol Dunaway, Appellants,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 88A01–0404–CV–151.

Court of Appeals of Indiana.

Aug. 12, 2004.

David E. Mosley, Mosley, Bertrand, Jacobs & McCall, Jeffersonville, IN, Attorney for Appellants.

Randall A. Lakey, Smith & Wade, Carmel, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Donnie and Lisa Dunaway ("the Dunaways") appeal the trial court's entry of summary judgment in favor of Allstate Insurance Company ("Allstate") and present the following issues for review:

1. Whether the trial court properly granted summary judgment in Allstate's favor on the Dunaways' breach of contract claim based on the policy's one-year limitations clause.

2. Whether the one-year limitations clause bars the Dunaways' claims for breach of the duty of good faith and unjust enrichment.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

On March 23, 2001, a fire destroyed the Dunaways' home, along with all of their personal effects in the home. The Dunaways had a homeowners' insurance policy with Allstate, which provided in relevant part:

Section I   Conditions

* * *

3.   What You Must Do After a Loss

In the event of a loss to any property that may be covered by this policy, you must:

* * *

g) within 60 days after the loss, give us a signed, sworn proof of the loss.

\* \* \*

4.   Our Settlement Options

In the event of a covered loss, we have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after we receive your signed, sworn proof of loss we will notify you of the option or options we intend to exercise.

\* \* \*

12.   Suit Against Us

No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

Appellant's App. at 89–90, 93 (emphasis omitted).

The Dunaways promptly notified Allstate of their loss. On March 28, 2001, Allstate mailed a proof of loss form to the Dunaways. On May 9, 2001, Allstate's legal counsel sent the Dunaways a letter which informed them in relevant part that: (1) Allstate had not made a determination regarding whether it is required to provide coverage for the claim; (2) a full and complete investigation of the claim was necessary; (3) Allstate wanted to conduct examinations of the Dunaways under oath; and (4) the Dunaways needed to submit their proof of loss form before the examinations. That letter also provided: "By conducting further investigation including the examinations under oath, [Allstate] is not waiving any of the rights available to it under the policy of insurance issued to you. It shall reserve all of its rights and defenses and insist upon full and complete compliance with all of the terms and policy provisions." Appellant's App. at 199–200. Allstate conducted examinations of the Dunaways in June 2001 and, with Allstate's agreement, the Dunaways submitted their proof of loss form to Allstate on August 15, 2001, which was more than sixty days after their loss.

On August 24, 2001, the Dunaways' legal counsel sent a letter to Allstate demanding payment of their claim by September 15, 2001. Allstate responded, in part, that it would attempt to complete its investigation as soon as possible. On November 9, 2001, almost ninety days after the Dunaways had submitted their proof of loss form, Allstate sent the Dunaways a letter denying their claim. That letter set forth the limitations clause of the policy, which, again, provided: "No suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." Appellant's App. at 172. Also on November 9, Allstate sent the Dunaways a separate letter informing them that Allstate would pay no further living expenses on the Dunaways' behalf after December 30, 2001.

Next, the Dunaways' counsel requested a copy of the insurance policy, which Allstate provided. The Dunaways filed their Complaint against Allstate on August 9, 2002. Allstate filed its Answer in October 2002. In November 2002, Allstate filed its motion for summary judgment. The Dunaways responded to Allstate's motion and filed designations in opposition to the motion. Allstate filed its reply, and the Dunaways filed a sur-reply. In January 2004, the trial court heard argument, and on

February 9, 2004, the court granted Allstate's motion. The Dunaways filed a motion to correct error, which the court denied. The Dunaways now appeal.

## DISCUSSION AND DECISION

### Standard of Review

As we stated in *Brady v. Allstate Indem. Co.*, 788 N.E.2d 916, 919 (Ind.Ct. App.2003):

The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. A trial court's grant of summary judgment is clothed with a presumption of validity on appeal, and the appellant bears the burden of demonstrating that the trial court erred. Nevertheless, the record must be carefully scrutinized to ensure that the [nonmoving] party was not improperly denied a day in court. In determining the propriety of summary judgment, we apply the same standard as the trial court. Under Indiana law, the party moving for summary judgment must demonstrate the absence of any genuine issue of material fact and only then is the nonmovant required to come forward with contrary evidence. The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party.... If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we affirm.

(Citations and quotations omitted).

### Issue One: Waiver of One–Year Limitations Clause

The Dunaways first assert that the trial court improperly granted Allstate's motion for summary judgment because: (1) Allstate waived reliance on the limitations clause which required the Dunaways to bring suit within one year of the loss; and (2) in the alternative, there is a genuine issue of material fact whether Allstate waived the limitations clause. As we explained in *Summers v. Auto–Owners Ins. Co.*, 719 N.E.2d 412, 414–15 (Ind.Ct. App.1999):

"It is well-established in Indiana that, while not favored, ... contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded." The "purpose of such provisions concerns not a specific date following the loss but unreasonable delay in proceeding to enforce or pursue the claim." That is, these limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates. Such limitations provisions may be waived either expressly or impliedly. " 'A waiver or estoppel may result from [the] acts of [an] insurer causing [the] insured or claimant under the policy to delay in bringing suit until after the time provided for in the policy.' " We have described our analysis of implied waivers as follows:

Contractual limitation periods may be waived by an insurer if its conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required. The focus of our inquiry then is upon the relationship between the parties, seeking to determine "whether anything has been done ... which would cause the insured to reasonably believe the limitation period will not be insisted upon." If such a belief has been fostered by

the insurer, it may no longer raise the limitation period as a defense. "To hold otherwise, ... would be to allow the insurer to lull an insured into not pressing his rights and then deny liability on the basis of the limitation period."

(Citations and emphasis omitted); *see also Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 991 (1977).

Our review of applicable case law shows that whether an insurer has waived reliance on a limitations provision is usually a question of fact. For example, in *Huff*, 363 N.E.2d at 992, the insured suffered a loss in February 1970 and reported that loss to his local agent. *Id.* Thereafter, the insurer investigated and negotiated with the insured regarding the claim well beyond the one-year limitations provision contained in the policy. *Id.* The insurer eventually denied the claim, and the insured sued, arguing that the insurer had impliedly waived reliance on the limitations provision. A jury returned a verdict in favor of the insured, but the trial court granted the insurer's motion for judgment notwithstanding the verdict. *Id.* at 988. Our supreme court held that the trial court erred and explained as follows:

> One could reasonably conclude that verified proofs of loss were not being insisted upon and that resort to legal proceedings would not be necessary to collect on the claim. *Once notice was given [by the insured] and no objection was raised to the mode of documentation and liability was not denied until long after the twelve-month period, then the insurer has waived his right to insist on either provision.* To hold otherwise would be to allow the insurer to lull an insured into not pressing his rights and to then deny liability on the basis of the limitation period.

*Id.* (emphasis added). Thus, although *Huff* was not a summary judgment case, the court determined that the jury, not the trial court, should decide whether the insurer had waived reliance on the limitations provision.

In *Wingenroth v. American States Ins. Co.*, 455 N.E.2d 968, 968–69 (Ind.Ct.App. 1983), the insureds suffered a loss in June 1976, which they immediately reported to the insurer. The insurer began having repairs done, and in August 1977, the insurer issued a check to the insureds for such repairs. *Id.* at 968. The insureds initially did not endorse the check because they feared that the insurer might refuse to pay for any additional damages subsequently discovered. *Id.* After they contacted the insurer with their concerns, the insurer wrote the insureds a letter informing them that it would honor additional claims and that endorsing the check in no way released the insurer from its obligations under the policy. *Id.* at 968–69. The insureds endorsed the check more than one year after their loss had occurred. After the insureds discovered additional damage, negotiations regarding the insureds' claim continued. The insurer and the insureds eventually reached an impasse, and the insureds sued the insurer. *Id.* at 969. The insurer argued that their suit was barred by the one-year limitations clause, and the trial court agreed and granted summary judgment in the insurer's favor. *Id.* On appeal, we determined that there were genuine issues of material fact precluding summary judgment and explained in relevant part as follows:

> While the [insureds] endorsed the first check received from [the insurer] more than one year after inception of their loss, they did so only after receiving assurances from its agent that any subsequently discovered damages would also be covered. Although the letter did

not expressly declare [the insurer] was waiving the one year limitation period, it clearly could give rise to the reasonable inference that the company would not require strict compliance with the provision.

*Id.* at 970; *see also Auto–Owners Ins. Co. v. Cox,* 731 N.E.2d 465, 468 (Ind.Ct.App. 2000) (holding issues of fact precluded summary judgment where insured immediately notified insurer of loss, insurer did not object to documentation provided, insured continued negotiations with insurer after efforts to repair damages had failed, and insurer issued check for repairs well after one-year limitations period).

Still, this court has determined that an insurer was entitled to summary judgment where the insureds claimed that the insurer had waived reliance on a limitations clause. In *Summers,* 719 N.E.2d at 415–16, the insured suffered a loss, but did not immediately notify the insurer and did not submit a proof of loss form in a timely manner. The insurer then sent the insured a letter explaining that it wanted to examine the insured under oath, but it took three additional letters to schedule that examination. During the examination, the insured's counsel challenged the execution of an authorization for the release of the insured's tax returns. *Id.* at 416. The insurer then sent a transcript of the examination to the insured for signature and provided authority for its access to the tax returns. *Id.* The insured did not respond to the insurer until two months after the one-year limitations period had expired, at which time he challenged parts of the transcript but did not provide the insurer with a signed copy. *Id.* On appeal, we determined in relevant part that the insurer did not impliedly waive the requirement that any suit be brought within one year of the loss. *Id.* Specifically, we stated:

It is true that other than giving [the insured] copies of the policy, [the insurer] did not further expressly inform [the insured] of the one-year deadline. We have stated that generally an insurer need not so inform an insured. An exception to the general rule exists. Where "an insurance carrier does not deny coverage or liability, and proceeds to negotiate with the insured toward settlement of the claim, the law will imply a waiver of the contractual limitation for the bringing of suit, unless and until the insurer puts the insured on notice that litigation is necessary if he desires to pursue his claim further."

[The insurer] did not deny coverage of [the insured's] claim within the one-year period. However, [the insurer] did not reach the settlement negotiation stage. Indeed, no offer of money ever occurred. Instead, [the insurer] simply attempted to investigate the claim pursuant to its policy. Thus, the exception does not apply, and [the insurer] was under no obligation to expressly put [the insured] on notice that litigation within one year would be necessary if he wished to pursue his claim further.

*Moreover, despite its repeated attempts to expedite the process, [the insurer's] investigation was hampered by [the insured's and his counsel's] failure to follow the policy's requirements. Even the numerous reminders that [the insurer] was not waiving its policy rights failed to motivate [the insured] to proceed in a timely fashion.* Under these circumstances, no waiver of the contractual limitation for the bringing of suit can be implied.

*Id.* at 416–17 (citations and footnote omitted, emphasis added). Accordingly, summary judgment on the issue of waiver was appropriate in *Summers,* where the insured repeatedly failed to comply with

deadlines and where the insurer's actions were consistent with the policy.

■ Here, the Dunaways assert that the following facts establish a genuine issue of fact regarding waiver: (1) Allstate acquiesced in the Dunaways' late filing of their proof of loss form; (2) Allstate failed to comply with the policy provision that required it to notify the Dunaways of its decision within thirty days of receiving the proof of loss form; and (3) Allstate sent the Dunaways a "confusing letter" regarding their living expenses on the same date it had denied their claim. Brief of Appellant at 8. Allstate responds that none of those facts create an issue of fact precluding summary judgment in its favor. But we must agree with the Dunaways.

■ Initially, we address Allstate's contention that the thirty-day response provision in the policy does not apply in this case. Again, that provision provides:

4. Our Settlement Options

In the event of a covered loss, we have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after we receive your signed sworn proof of loss we will notify you of the option or options we intend to exercise.

Appellant's App. at 90 (emphasis omitted). In particular, Allstate maintains that the thirty-day response provision is "triggered only in the event of a covered loss." Brief of Appellee at 9. And according to Allstate, because the Dunaways' loss was not covered, it was not required to comply with

the thirty-day response provision. We cannot agree.

■ The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution. *American Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 232 (Ind.Ct.App.2004). If an insurance contract is clear and unambiguous, the language must be given its plain meaning. *Id.* However, if there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity. *Id.* Ambiguity in an insurance policy exists when the language is susceptible to more than one interpretation and reasonably intelligent persons could honestly differ as to the meaning of the policy language. *Id.*

Contrary to Allstate's suggestion, it is not clear from reading the thirty-day response provision whether Allstate must respond to a proof of loss within thirty days *only* when the loss is covered. While the thirty-day response provision follows the section that sets forth Allstate's options in the event of a covered loss, the thirty-day response provision is not limited by its terms only to those losses that are covered by the policy. Rather, it provides that "[w]ithin 30 days after [Allstate] receive[s] [the] signed, sworn proof of loss [Allstate] will notify [the insured] of the option or options" it intends to exercise. Appellant's App. at 90. Because the thirty-day provision is susceptible to more than one interpretation, we adopt the interpretation that is most favorable to the insured. *See American Family*, 803 N.E.2d at 232. Indeed, like the limitations clause, requiring the insurer to respond promptly to a proof of loss, regardless of whether the loss is covered, furthers the goal of the timely resolution of insurance claims. *See, e.g.,*

*Lumpkins v. Grange Mut. Cos.,* 553 N.E.2d 871, 874 (Ind.Ct.App.1990) (stating purpose of limiting provision is to promote certainty and hasten resolution of claims). Thus, we conclude that based on the policy language, Allstate was required to respond to the Dunaways'. proof of loss form within thirty days.

Moreover, Allstate concedes that it allowed the Dunaways to submit their proof of loss form more than sixty days from the date of the loss, as required by the policy. Specifically, the Dunaways' loss occurred on March 23, 2001, and they immediately reported the loss to Allstate. In late March, Allstate sent a proof of loss form to the Dunaways. In May, Allstate sent a letter to the Dunaways informing them that it wanted to schedule examinations under oath. In addition, Allstate notified the Dunaways that by performing the examinations, it was not waiving any rights under the policy and would continue to insist upon full and complete compliance with the policy provisions. But Allstate also allowed the Dunaways to submit their proof of loss form more than sixty days after the loss.

Allstate then conducted examinations of the Dunaways in June 2001, during which Allstate, again, informed the Dunaways that it was not waiving any rights under the policy. The Dunaways submitted their proof of loss form on August 15, 2001. The Dunaways' counsel contacted Allstate in late September and asked for full payment of the claim within thirty days from the date Allstate had received the proof of loss, namely, September 15, 2001. Allstate responded that it was still investigating the claim. Then, on November 9, 2001, Allstate sent two letters to the Dunaways. In one letter, Allstate informed the Dunaways that it would pay for no further living expenses after December 30, 2001. In the other letter, Allstate: (1) denied the Duna-

ways' claim; (2) informed them, again, that Allstate was not waiving any rights under the policy; and (3) expressly set forth the one-year limitations clause.

We acknowledge that, unlike many of the cases where an implied waiver has been found, Allstate denied the Dunaways' claim well before the expiration of the one-year period set forth in the limitations clause. And on more than one occasion, including in the denial letter, Allstate informed the Dunaways that it was not waiving any rights under the policy. We agree with Allstate that it did not expressly waive reliance on the one-year limitations clause. However, Allstate's actions, which are significant in determining implied waiver, were not entirely consistent with other time limitations set forth in the policy. Allstate allowed the Dunaways to file their proof of loss form late and did not comply with the policy's thirty-day response provision. And, unlike the insured in *Summers,* the Dunaways consistently cooperated with Allstate and did not drag their feet or hinder Allstate's investigation of the claim.

As with any appeal, we are mindful of the procedural posture in which the Dunaways' claim of implied waiver has come before us. Even where the trial court, or this court on appeal, believes that the non-moving party will not be successful at trial, summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *See Springman by Springman v. Hall,* 642 N.E.2d 521, 523 (Ind.Ct.App.1994). On summary judgment, it is our duty to construe the evidence in favor of the nonmoving party and resolve all doubts against the moving party. *See Brady,* 788 N.E.2d at 919. And in deciding whether an insurer has impliedly waived a limitations provision, we "seek[ ] to determine 'whether anything has been done ... which would

cause the insured to reasonably believe the limitation period will not be insisted upon.'" *Summers,* 719 N.E.2d at 415 (quoting *Wingenroth,* 455 N.E.2d at 970). Here, we cannot conclude as a matter of law that Allstate did *nothing* to cause the Dunaways to reasonably believe that Allstate would not insist upon compliance with the limitations provision. Rather, given the fact that Allstate failed to comply with certain time provisions in the policy, whether it was reasonable for the Dunaways to believe that Allstate would not require strict compliance with the one-year limitations provision is a question of fact that must be determined by the trier of fact.[1] Consequently, whether the Dunaways' breach of contract claim is barred by the limitations clause is an issue left for another day. We conclude that the trial court erred when it granted Allstate's motion for summary judgment on the Dunaways' breach of contract claim.

### Issue Two: Claims for Breach of the Duty of Good Faith and Unjust Enrichment

Although we have concluded that whether Allstate waived reliance on the limitations clause is a question of fact, the Dunaways assert that even if that clause bars their breach of contract claim, the clause does not, as a matter of law, bar their remaining claims for breach of the duty of good faith and unjust enrichment. Because the Dunaways raise pure questions of law that will likely recur on remand, we address those arguments in turn.

### A. Breach of the Duty of Good Faith

In *Troxell v. American States Ins. Co.,* 596 N.E.2d 921, 924 (Ind.Ct.App. 1992), this court determined that a limitations clause in an insurance policy does not apply to bar actions against the insurer that sound in tort and are not actions on the policy. As in this case, the insureds in *Troxell* sued their insurer and alleged, in part, bad faith on the part of the insurer. *Id.* But at the time we decided *Troxell,* our courts had not recognized as an independent tort an insurer's breach of its duty to deal in good faith with its insured. *Id.* at 925. Thus, although we agreed with the insureds that a limitations clause would not bar tort actions generally, the insureds in that case did not have available to them the independent tort of bad faith. Rather, their bad faith claims were based on the insurance contract. *See id.*

The following year, however, our supreme court recognized the independent cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. *See Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 519 (Ind.1993). But since *Erie,* our courts have not squarely addressed whether a limitations clause like the one in this case, which provides that "[a]ny suit or action must be brought within one year after the inception of loss or damage," bars a tort claim for breach of duty of good faith that the insured files more than one year after the loss. We can only conclude that had our supreme court decided *Erie* before this court decided *Troxell,* we would have squarely held that the limitations clause in that case did not bar the insureds' tort claim for breach of the duty of good faith.[2]

1. Because we conclude that Allstate's failure to comply with certain time provisions set forth in the policy is sufficient to create a genuine issue of material fact regarding implied waiver, we need not address the Dunaways' contention that the letter Allstate sent in December 2001 regarding living expenses also creates an issue of fact that precludes summary judgment.

2. The limitations clause at issue in *Troxell* provided:

   SUIT AGAINST US. No action shall be brought unless there has been compliance

Allstate acknowledges our decision in *Troxell*, but claims that that case should not determine the outcome here. In support, Allstate directs us two decisions which it contends leads to the conclusion that the limitations clause in its policy bars any and all claims filed after one year of the loss, namely, *Young v. Tri–Etch, Inc.*, 790 N.E.2d 456 (Ind.2003), and *Orkin Exterminating Co., Inc. v. Walters*, 466 N.E.2d 55 (Ind.Ct.App.1984), *trans. denied, disapproved on other grounds, Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998). But both of those cases are distinguishable.

Our supreme court succinctly summarized the relevant portions of our decision in *Orkin* as follows:

> In *Orkin*, the plaintiff asked Orkin Exterminating Co. to inspect her home for insect infestation. After insects were discovered, plaintiff signed a "Subterranean Termite Agreement" which provided for an initial treatment and Orkin's "Continuous Protection Guarantee" for an annual fee. Upon treatment, plaintiff received the "Lifetime Re-treatment Guarantee" which guaranteed additional treatments at no cost if termites reappeared during the guarantee period. This agreement expressly limited Orkin's liability to re-treatment only and expressly waived any liability for termite damage to the structure or the contents.

> Plaintiff discovered continued termite damage and sued Orkin for negligent breach of contract. The trial court entered judgment for the plaintiff, finding that Orkin's breach of duty constituted "tortious malfeasance," and allowed the plaintiff to recover damages in tort. The Court of Appeals reversed the trial court, noting that a "suit based in tort does not change the fact that Orkin's duty to [the plaintiff] is based on the contract." In addition, "bringing a suit in tort does not allow [the plaintiff] to avoid the limitation of liability clause in the contract." [3]

*Young*, 790 N.E.2d at 458 (citations omitted).

In *Tri–Etch*, a liquor store employee was beaten to death by a robber, and the store had a contract with Tri–Etch to maintain the store's security alarm system. 790 N.E.2d at 456–57. That contract contained a clause requiring that any lawsuit against Tri–Etch be filed within one year of the event giving rise to the lawsuit. *Id.* at 456. The employee's estate filed a wrongful death action against Tri–Etch more than one year after the incident,[4] and both the trial court and this court relied on *Orkin* to conclude that the estate's claim was barred by the one-year limitations clause. *Id.* at 457. Our supreme court disagreed and concluded that *Orkin* did

---

with the policy provisions and the action is started within one year after the loss. 596 N.E.2d at 923.

3. We note that the limitations clause in *Orkin* was not a one-year limitations clause, but rather it limited Orkin's liability to re-treatment. 466 N.E.2d at 56.

4. The evidence showed that Tri–Etch had provided an additional service to the liquor store which did not appear in the contract. Specifically, if the store's alarm system had not been set by closing time, which was midnight, Tri–Etch would notify another store or call the police. On the night in question, the

employee was robbed around 11:50 p.m., and he had not yet set the alarm. The robber kidnapped the employee, drove him to a nearby park, beat him, and left him tied to a tree. The estate claimed that had Tri–Etch notified another store or the authorities when the alarm system was not set, the employee might have been discovered earlier and might have survived the attack. As it turned out, the employee was not discovered until early the following morning, and died later that day as a result of his injuries. *Tri–Etch*, 790 N.E.2d at 457.

not control the outcome because *Tri–Etch* involved a "lawsuit between one of the original parties to a contract that contains a liability limitation provision and a non-party who never agreed to the terms of the contract." *Id.* at 458.

After reviewing the decisions in *Orkin* and *Tri–Etch,* we disagree with Allstate's suggestion that those cases bear on the outcome here. First, we find it significant that neither *Orkin* nor *Tri–Etch* involved insurance contracts, and as the court in *Erie* noted, insurance companies and their insureds share a "special relationship." 622 N.E.2d at 519. Additionally, neither case involved a claim of bad faith on the part of an insurer, and neither case addresses the effect of a one-year limitations clause on a tort claim for bad faith.

On the other hand, the decisions in *Troxell* and *Erie* both address insurance contracts and both involve claims of bad faith. Thus, we discern no reason to look beyond *Troxell* and *Erie* in deciding the issue here. Based on those cases, we conclude that the one-year limitations clause does not bar the Dunaways' breach of the duty of good faith tort claim. *See Troxell,* 596 N.E.2d at 924 ("We agree with [the insureds'] basic assertion that the limitation clause would not apply to bar actions against [the insurer] that sound in tort and are not actions on the policy."); *Erie,* 622 N.E.2d at 519 (recognizing cause of action for tortious breach of insurer's duty to deal with insured in good faith). Thus, the trial court erred when it granted Allstate's motion for summary judgment on that claim.

### B. Unjust Enrichment

■ Again, assuming Allstate did not waive reliance on the limitations clause, the Dunaways contend that, as a matter of law, that clause does not bar their claim for unjust enrichment. But the Dunaways present that argument for the first time on appeal. Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived. *Poulard v. Lauth,* 793 N.E.2d 1120, 1123 (Ind.Ct.App.2003). In *Poulard,* we determined that a nonmoving party who had failed to raise an issue in response to a summary judgment motion had waived that issue on appeal. *Id.*

■ Here, when the Dunaways responded to Allstate's motion for summary judgment, they argued only that: (1) summary judgment was improper because Allstate waived the limitations clause; and (2) the limitations clause does not bar their tort claim for breach of the duty of good faith. The Dunaways did not argue to the trial court in either their reply or sur-reply to Allstate's motion for summary judgment that the limitations clause does not bar their claim for unjust enrichment as a matter of law. Thus, they have waived that argument on appeal.

■ Waiver notwithstanding, and regardless of whether the Dunaways' claim for unjust enrichment is barred by the one-year limitations clause, we agree with Allstate that under Indiana law the Dunaways are not entitled to have their premiums returned to them. "It is axiomatic that a court cannot award a refund of premiums paid to secure insurance once the insurance company has been put at risk on behalf of the insured." *Humana Health Care Plans v. Snyder–Gilbert,* 596 N.E.2d 299, 300 (Ind.Ct.App.1992). Further, " '[i]f a policy is valid at its inception, then the company can not be required to refund the premiums received.' " *Id.* (quoting *Standley v. Northwestern Mut. Life Ins. Co.,* 95 Ind. 254, 258, 1884 WL 5281 (1883)). Here, neither party alleges that the Dunaways' policy was invalid or void. And Allstate assumed the risk of insuring the Dunaways, even though it

eventually denied their claim. Thus, we conclude as a matter of law that the Dunaways are not entitled to the premiums they paid Allstate and affirm the trial court's entry of summary judgment in Allstate's favor on that claim. *See Brady,* 788 N.E.2d at 919 (stating we affirm trial court's grant of summary judgment on any theory or basis in the record).

## CONCLUSION

We conclude that there is a genuine issue of material fact whether Allstate impliedly waived reliance on the one-year limitations clause. Further, even if Allstate did not waive reliance on that clause, the limitations clause does not bar the Dunaways' tort claim for breach of the duty of good faith. However, the Dunaways have waived their arguments regarding their claim for unjust enrichment. Therefore, we affirm the trial court's summary judgment on the unjust enrichment claim and reverse summary judgment on the breach of contract and the duty of good faith claims. We remand for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

KIRSCH, C.J., and RILEY, J., concur.