## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 30 2019, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANTS, PRO SE

Melvin Brett Randall
Matthew Jacob Randall
Mesa, Arizona

ATTORNEYS FOR APPELLEE

Joshua W. Casselman
Cassandra A. Nielsen
Rubin & Levin, P.C.
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Melvin Brett Randall and
Matthew Jacob Randall,
Individually and d/b/a Randall
Jeep and Auto Sales,

*Appellants-Defendants,*

v.

Automotive Finance
Corporation,

*Appellee-Plaintiff.*

September 30, 2019

Court of Appeals Case No.
19A-CC-100

Appeal from the Marion Superior
Court

The Honorable John F. Hanley,
Judge

Trial Court Cause No.
49D11-1610-CC-37223

**Pyle, Judge.**

# Statement of the Case

Appellants-Defendants, Melvin Brett Randall ("Melvin") and Matthew Jacob Randall ("Matthew") (collectively, "the Randalls"), individually and d/b/a Randall Jeep and Auto Sales ("the Auto Dealership"), appeal, pro se, the trial court's grant of summary judgment to Appellee-Plaintiff, Automotive Finance Corporation ("AFC"). Concluding there is no error in the trial court's entry of summary judgment, we affirm the trial court's judgment.

We affirm.

# Issue

Whether the trial court erred by granting summary judgment to AFC.

# Facts

AFC is an Indiana corporation that provides financing to automobile dealers. The Randalls operate the Auto Dealership, which is located in Mesa, Arizona. On October 23, 2015, the Randalls, on behalf of the Auto Dealership, executed a Demand Promissory Note and Security Agreement ("the Note") along with a power of attorney and term sheets for the Note. Pursuant to the Note, AFC provided "floorplan financing" to the Auto Dealership to purchase vehicles for its inventory ("Purchase Money Inventory), and the Auto Dealership agreed to pay AFC $25,000.00. (App. Vol. 4 at 101). To secure its "prompt payment" of obligations under the Note, the Auto Dealership granted AFC "a lien and a

security interest in the Purchase Money Inventory and the Titles thereto" as well as in "all of the [Auto Dealership's] Collateral." (App. Vol. 4 at 11).

[4] The Note also provided that the Auto Dealership, upon the sale of any item of Purchase Money Inventory, would hold the proceeds in trust for AFC. The repayment of the Auto Dealership's obligations under the Note were set forth, in relevant part, as follows:

> 2.6 Repayment of Obligations. [The Auto Dealership] shall pay to [AFC] . . . the Obligations, on demand and without notice, and in any event, with respect to an item of Purchase Money Inventory on the earliest of: (a) [AFC's] demand[;] (b) forty-eight (48) hours after the disposition by sale or otherwise of an item of Purchase Money Inventory; or (c) the Curtailment Date. All proceeds of any such disposition shall be received by [the Auto Dealership] in trust for [AFC] and forwarded promptly to [AFC].
> . . .

(App. Vol. 4 at 10). The Note provided that "[u]ntil demand by [AFC] or until an Event of Default[1] (at which time the Obligations shall at [AFC's] option and without notice become immediately due and payable in full), [the Auto Dealership] shall pay the Obligations as provided under Section 2.6." (App. Vol. 4 at 8). The Note also provided that the Auto Dealership's "obligation to

---

[1] An Event of Default included, among others, the following: (1) "the default in any payment or repayment when due of any of the Purchase Money Inventory Obligations or Obligations, as provided in the Note;" (2) "[AFC's] deeming itself insecure regarding the Collateral or the possibility of [the Auto Dealership's] default in any payment or repayment of any of the Obligations;" (3) "the default in payment or performance of any debt or obligation of [the Auto Dealership] . . . whether to [AFC] or to a third party[.]" (App. Vol. 4 at 13, 14).

make full payment" under the Note was "unconditional" and would "not be affected by claims or disputes [the Auto Dealership] may have against any other person, including but not limited to claims or disputes [the Auto Dealership] may have against [AFC] . . . ." (App. Vol. 4 at 11). Additionally, the Note provided that "[w]henever an Event of Default shall exist, . . . [AFC], at its option and without demand or notice of any kind, may declare the Obligations to be immediately due and payable." (App. Vol. 4 at 14).

[5] Under the Note, the Randalls agreed to "waive[] demand and presentment for payment, protest, notice of protest and notice of non-payment for dishonor of this Note[.]" (App. Vol. 4 at 8). They also agreed to "waive[] any defenses" that they might assert for obligations under the Note "including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, statute of limitations, lender liability, accord and satisfaction, and usury." (App. Vol. 4 at 8).[2] Additionally, the Randalls agreed to "waive[] all defenses based on suretyship or impairment of collateral[.]" (App. Vol. 4 at 8).

[6] The same day that the Randalls executed the Note, they also executed an Unconditional and Continuing Guaranty ("the Guaranty"). Under the Guaranty, the Randalls agreed to "absolutely and unconditionally guaranty the

_____

[2] Under both the Note and the Guaranty, the Randalls agreed to submit to the personal jurisdiction of Indiana courts and agreed to venue in either Marion County or Hamilton County.

full and prompt payment, when due, whether by acceleration or otherwise, together with interest and all costs, expenses and attorneys' fees, of any and all obligations, indebtedness and liabilities of [the Auto Dealership] to [AFC]" under the Note. (App. Vol. 4 at 22). The Randalls also agreed that, if the Auto Dealership failed to pay its liabilities under the Note, they would "immediately pay the amount due and unpaid by [the Auto Dealership] in like manner as if such amount constituted the direct and primary obligation of the [Randalls]." (App. Vol. 4 at 22). As they had done under the Note, the Randalls also agreed to waive presentment, notice of non-payment, and defenses.

[7] On October 19, 2016, AFC filed a three-count complaint against the Randalls and the Auto Dealership. In Count 1, AFC raised a breach of contract claim against the Auto Dealership, alleging that the Auto Dealership had failed to make payments according to the terms of the Note and that there was an unpaid balance of $23,645.00 plus interest, fees, costs, and attorney fees. In Count 2, AFC sought recovery under the Guaranty from the Randalls as guarantors of the Auto Dealership's indebtedness under the Note. In Count 3, AFC alleged that the Randalls and the Auto Dealership had committed fraud by failing to hold the proceeds from the sale of Purchase Money Inventory in trust for the benefit of AFC. AFC attached the following documents to its complaint: Exhibit A, which included the Note, the Guaranty, a power of attorney, a term sheet for the Note, and a term sheet for salvage vehicles; and

Exhibit B, which contained an Account Balance or demand for payment, showing that the Randalls unpaid principal due was $23,645.00.

[8] When the Randalls did not file an answer within the required time period, AFC filed a motion for default judgment, which the trial court granted. A few months later, the Randalls filed a motion to set aside the default judgment. The trial court held a hearing and granted the Randalls' motion.

[9] In August 2017, AFC filed a motion for summary judgment, and the Randalls filed a cross-motion for summary judgment. In November 2017, the trial court denied both parties' summary judgment motions.

[10] Thereafter, AFC continued with discovery and served the Randalls with requests for admission ("RFA") on December 6, 2017. The RFA included, among others, the following statements:

> 2. That [the Randalls ] signed [the Note] . . . to obtain financing for the purchase of vehicles.
>
> * * * * *
>
> 4. That vehicles financed by [AFC] are considered purchase money inventory.
>
> 5. That [the Note] . . . grants a security interest in and a lien on the titles to all Purchase Money Inventory in favor of [AFC].
>
> 6. [AFC] has no contractual duty or obligation to release titles to Purchase Money Inventory.

7. That [AFC] has no contractual duty or obligation to release titles to Purchase Money Inventory if any outstanding obligations remain unpaid.

8. [The Randalls] have an obligation to make full payment regardless of claims against or disputes with [AFC].

9. [The Randalls] sold Purchase Money Inventory and failed to remit proceeds of said sales to [AFC].[3]

\* \* \* \* \*

25. [The Randalls] sold Purchase Money Inventory out of trust.

26. [The Randalls] have no legitimate reason, including affirmative defenses or other matters of abatement, for its refusal to pay [AFC] $23,645.00 principal, $10,997.62 interest through December 6, 2017, with additional interest after December 6, 2017 at 15% per annum.

27. [The Randalls] have waived the defense of impairment of collateral.

\* \* \* \* \*

29. [The Randalls] are indebted to [AFC] in the sum of $23,645.00 principal, $10,997.62 interest through December 6, 2017, with additional interest after December 6, 2017 at 15% per annum.

30. [AFC] has performed all conditions incumbent upon it to be performed under the terms of the original of the contract.

---

[3] AFC included specific requests regarding the Randalls' sale of stock numbers 2, 12, 13, 14, 15, and 16 and their failure to remit the proceeds from these sales.

(Appellee's App. Vol. 2 at 59-60). The Randalls did not respond to the RFA within the required time period. As a result, the matters contained in the RFA were admitted and conclusively established pursuant to Indiana Trial Rule 36.

[11] On February 13, 2018, AFC filed a second motion for summary judgment.[4] AFC argued that it was entitled to judgment on Counts 1 and 2 in its complaint, which sought payment for the amount due under the Note, based on a breach of contract by the Auto Dealership and the Guaranty executed by the Randalls. AFC included the following designated evidence: (1) the complaint along with Exhibits A and B attached to the complaint; (2) the RFA sent to the Randalls; (3) the Odyssey File & Serve receipt showing that AFC had served the Randalls with the RFA on December 6, 2017; (4) the affidavit of Angela G. McGraw ("McGraw affidavit") and all exhibits attached thereto;[5] (5) the affidavit of Anthony Middleton ("Middleton affidavit") and all exhibits attached thereto;[6] (6) the affidavit of attorney Cassandra Nielson ("Nielson affidavit") and the attorney fee exhibit attached thereto.

---

[4] AFC electronically served its summary judgment motion to the Randalls at their email addresses listed as their e-file service contact and also to other email addresses that the Randalls had previously used when corresponding with AFC's counsel. Additionally, AFC served the Randalls via United States mail.

[5] McGraw, who was employed at the law firm of AFC's counsel, attested that she had served the RFA via United States mail and confirmed that the mailing had never been returned to the law firm.

[6] Middleton, who was a senior collections manager for AFC, attested that AFC's books and records showed that AFC had provided floorplan financing to the Randalls pursuant to the Note but that the Randalls were in default by failing to pay AFC according to the terms of the Note. More specifically, Middleton attested that the Randalls had sold stock numbers 2, 12, 13, 14, 15, and 16 and had not remitted payment to AFC as required under the Note. Additionally, Middleton attested that, under the terms of the Note, AFC had "no

[12]     On March 16, 2018,[7] the Randalls filed a summary judgment response/cross-motion for summary judgment and a "separate statement of facts" in support of their response/cross-motion. (App. Vol. 4 at 126). The Randalls, however, did not include any affidavits or specifically designate any evidence.[8] In their response and separate statement of facts, the Randalls did not dispute the elements of AFC's breach of contract claims in regard to the Note and the Guaranty. Indeed, they acknowledged the validity of the Note and Guaranty and that they had not paid the balance due. Nor did they challenge the amount due under the Note. Instead, they argued that they had been "unable to pay the balance owed for inventory purchases because [AFC] had refused to turn over the titles to vehicles[,]" and they generally argued that AFC's withholding of titles was a breach of its duty under the Note.[9] (App. Vol. 4 at 127).

[13]     Additionally, in their separate statement of facts and response, the Randalls argued that they had not known about the RFA until AFC had filed it summary

---

obligation to release titles to financed vehicles in which AFC maintain[ed] a contractual security interest . . . unless and until AFC [wa]s paid in full for the specific vehicle." (AFC's App. Vol. 2 at 68-69). Finally, Middleton attested that AFC's record and books showed that the Randalls owed $23,645.00 plus fees and interest.

[7] The electronic file stamp reveals that the Randalls filed their summary judgment response at 1:22 a.m. on March 16, 2018.

[8] In their separate statement of facts, the Randalls referenced an affidavit from Matthew "Jake" Randall and also referenced AFC's first summary judgment motion and an affidavit that was apparently part of the designated evidence in that first summary judgment. The Randalls, however, did not include any of these documents as designated evidence when filing their summary judgment response.

[9] The Randalls did not specify the vehicles for which they contended that AFC had withheld the titles.

judgment motion on February 13, 2018. The Randalls attached an exhibit to their separate statement of facts, and this exhibit contained copies of email correspondence between the Randalls and AFC's counsel.[10] The Randalls argued that AFC should have contacted them to confirm that they had received the RFA. They also suggested that the trial court could withdraw the admissions made under the RFA.

[14] Thereafter, on March 26, 2018, AFC filed a motion to strike the Randalls' summary judgment response, arguing that the response was untimely filed under Trial Rule 56(C).[11] AFC also argued that even if the trial court did not strike the Randalls' summary judgment response, the Randalls had failed to show the existence of any genuine issue of material fact. AFC pointed out that the Randalls had failed to designate any evidence and that their response relied merely upon their summary denials.

[15] The Randalls filed a response to AFC's motion to strike. They acknowledged that they had filed their response one day after it was due. Specifically, they

_____

[10] One of these emails, dated February 14, 2018, was sent from the Randalls to AFC's counsel. In this email, the Randalls informed AFC's counsel that they had received AFC's summary judgment motion and asserted that they had not previously received the RFA. Another email in this exhibit reveals that AFC's counsel notified the Randalls that they had both "e-served" and mailed the RFA, and AFC attached a copy of the RFA to that email. (App. Vol. 4 at 131). An additional email, dated February 27, 2018, indicates that the Randalls emailed RFA responses to AFC that same day; however, the Randalls did not include or designate those RFA responses as evidence with its summary judgment response.

[11] AFC asserted that the Randalls had failed to file their summary judgment response within thirty days of the date that AFC had electronically served them with its summary judgment motion.

acknowledged that they had filed their response on March 16, 2018 when it was due on March 15.

[16] On May 10, 2018, the trial court held a hearing on the pending motions.[12] A few days later, on May 15, 2018, the trial court entered an order, in which it: (1) granted AFC's motion to strike, noting that the Randalls' summary judgment response was untimely under Indiana Trial Rules 56 and 86(J); and (2) granted AFC's summary judgment motion and denied the Randalls' cross-motion for summary judgment.[13] The Randalls then filed a motion to correct error, which the trial court denied. The Randalls now appeal.

## Decision

[17] The Randalls argue that the trial court erred by granting summary judgment to AFC.[14]

---

[12] The transcript of the summary judgment hearing is not included in the record on appeal.

[13] The trial court's May 15, 2018 order was not entered into the chronological case summary until February 1, 2019. The judgment was entered as a final judgment under Trial Rule 54(B). The total amount of judgment entered was $44,891.33, which included $23,645.00 principal; $11,969.33 contract fees and interest; $8,985.00 attorney fees; and $292.00 costs.

[14] The Randalls also argue that the trial court erred by granting AFC's motion to strike their summary judgment response as untimely, and they attempt to make an argument not raised below to the trial court. Specifically, they now assert that their summary judgment was not untimely, claiming that the response was due on March 19, 2018 if the calculation were based on service by U.S. mail instead of basing it on electronic service. The Randalls, however, already admitted to the trial court that their response had been filed in Indiana on March 16, 2018 at 1:22 a.m., making it one day late. Thus, they invited any error of which they now complain. "A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Shipley v. KeyBank Nat'l Ass'n*, 821 N.E.2d 868, 879 (Ind. Ct. App. 2005). Moreover, "[i]ssues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived." *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App.

[18] Before addressing this appellate argument, we note that the Randalls proceed pro se in this appeal. "It is well settled that pro se litigants are held to the same legal standards as licensed attorneys." *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016), *reh'g denied*. "This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so." *Id.* at 983-84. "We will not become an advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.* at 984. When a party elects to proceed pro se on appeal, "there is no reason for us to indulge in any benevolent presumption on his behalf[] or [to] waive any rule for the orderly and proper conduct of his appeal." *Foley v. Mannor*, 844 N.E.2d 494, 502 n.1 (Ind. Ct. App. 2006).

[19] Our standard of review for summary judgment cases is well settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and it is

2004). Accordingly, the Randalls have waived their argument regarding the motion to strike. *Shipley*, 821 N.E.2d at 879 (explaining that based on invited error, the appellant had waived appellate argument); *Dunaway*, 813 N.E.2d at 387 (holding that appellant had waived appellate argument by failing to raise it below on summary judgment). Waiver notwithstanding, even if we found error as alleged and were to consider the Randalls' summary judgment response, we would still affirm the trial court's grant of AFC's summary judgment motion.

entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). If the moving party meets this burden, then the non-moving party must designate evidence demonstrating a genuine issue of material fact. *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). "The review of a summary judgment motion is limited to those materials designated to the trial court." *Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 165 (Ind. 2000). "[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). "We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party." *Knighten*, 45 N.E.3d at 791.

In this appeal, we are called upon to determine whether the trial court properly granted summary judgment in this contract dispute between AFC and the Randalls. "Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1287-88 (Ind. Ct. App. 2009) (citing *Colonial Penn Ins. Co v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)), *reh'g denied*. "The ultimate goal of any contract interpretation is to determine the intent of the parties when they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012), *reh'g denied.* To do so, "we begin with the plain language of the contract,

reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Hammerstone v. Ind. Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013).

[21] Here, AFC moved for summary judgment on its breach of contract claims in relation to the Note and the Guaranty. "To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). To prove its claims, AFC designated evidence showing that the Randalls, after having executed the Note and the Guaranty, had failed to pay AFC as required under the Note and the Guaranty and that AFC had resulting damages, which included $23,645.00 due from the Note and additional amounts for interest and attorney fees. Based on this designated evidence, the trial court concluded that the Randalls had breached the Note and the Guaranty and then granted summary judgment to AFC.[15]

[22] On appeal, the Randalls do not dispute the validity of the Note or the Guaranty, their failure to pay under the Note or the Guaranty, or the amount

---

[15] The trial court also denied the Randalls' cross-motion for summary judgment. They do not challenge that ruling on appeal.

due as a result of their breach. Nor do they specifically challenge any of AFC's designated evidence. Instead, the Randalls argue, as they did below, that their failure to pay was caused by AFC's act of withholding titles to unspecified vehicles.[16]

[23] Here, the Randalls filed a summary judgment response with no designated evidence. The response was untimely filed and was ultimately stricken by the trial court. AFC's designated evidence included the RFA that it had sent to the Randalls, and the RFA included an admission that AFC was not required to release titles to the Randalls when they had unpaid obligations. Moreover, the plain language of the Note reveals that the Randalls had an "unconditional" "obligation to make full payment" under the Note and that this obligation would "not be affected by claims or disputes . . . against [AFC] . . . ." (App. Vol. 4 at 11). Additionally, the Randalls agreed to waive various defenses against AFC. Because the Randalls have failed to prove that there are genuine issues of fact regarding AFC's breach of contract claims against them, we affirm the trial court's entry of summary judgment in favor of AFC.

---

[16] The Randalls also argue that summary judgment was improper because they have an affirmative defense that AFC failed to mitigate its damages. They did not raise this argument below in the summary judgment proceeding and did not designate any evidence regarding such an argument. Thus, they have waived any such argument, and we will not consider this argument. *See Dunaway*, 813 N.E.2d at 387 (holding that appellant had waived appellate argument by failing to raise it below on summary judgment).

Affirmed.

Robb, J., and Mathias, J., concur.